

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00206-CR

**WILLIE EDWARD DAVIS,**

**Appellant**

v.

**THE STATE OF TEXAS,**

**Appellee**

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 06-01284-CRF-85

## O P I N I O N

Appellant Willie Davis (Davis) was charged by indictment with the capital murder of Tommy Andrade. The indictment alleged that Davis shot Andrade while in the course of committing or attempting to commit the offenses of burglary of a habitation and aggravated robbery. The State's case against Davis was premised on his being criminally responsible under the law of parties (as part of a conspiracy to commit the felony offenses of burglary of a habitation and aggravated robbery), and the jury was charged on that theory. *See* TEX. PEN. CODE ANN. 7.02(b) (Vernon 2003). The jury found Davis guilty, and he received an automatic life sentence because the State did not

seek the death penalty. Raising forty-eight issues, Davis appeals. We will affirm.

**Recusal**

Davis's first three issues concern recusal of the trial judge. In August 2008, we held that the presiding judge of the administrative judicial district erred in holding the motion to recuse to be insufficient and abated the appeal and remanded the case to the trial court for further proceedings. *Davis v. State*, No. 10-07-00206-CR, 2008 WL 3845284, *1-2 (Tex. App.—Waco Aug. 13, 2008, order) (not designated for publication). After a hearing on Davis's recusal motion (which asserted four grounds for recusal) had been held and the motion had been denied by the Honorable Ed Magre, we abated the case a second time in March 2009 for the resolution of additional issues, and in July 2009, the case was reinstated and amended briefs were filed by both parties.

The fourth ground in the recusal motion was that the trial judge had a prejudice against Davis because Davis's trial counsel had cooperated with the Commission on Judicial Conduct by providing an affidavit to the Commission at the request of Ron Bennett, a Commission investigator. The affidavit, which was attached to the recusal motion, concerned the trial counsel's experiences and views relating to the trial judge's courtroom demeanor and conduct.

In anticipation of the recusal hearing, Davis sought to cause a subpoena to be issued to Bennett to testify at the recusal hearing. The Commission filed a motion for protective order seeking to prevent the subpoena from being issued and Davis from obtaining any Commission records relating to the fourth ground. A telephone hearing on the motion for protective order occurred, and Judge Magre granted the motion for

protective order.  Davis was not present and did not participate in the telephone hearing.  His first issue complains that he was denied his constitutional and statutory rights to be present for that hearing.  *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 33.03 (Vernon 2006); *Faretta v. California,* 422 U.S. 806, 820 n.15, 95 S.Ct. 2525, 2533 n.15, 45 L.Ed.2d 562 (1975) ("It is now accepted, for example, that an accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings").

A defendant's absence will not result in reversal unless there is a showing of actual injury or a showing of facts from which injury might reasonably be inferred. *Mares v. State,* 571 S.W.2d 303, 307 (Tex. Crim. App. 1978); *see also Carrion v. State,* 926 S.W.2d 625, 629 (Tex. App.—Eastland 1996, pet. ref'd); *Aguero v. State,* 818 S.W.2d 128, 133 (Tex. App.—San Antonio 1991, pet. ref'd); *West v. State,* 752 S.W.2d 593, 597 (Tex. App.—Tyler 1987, pet. ref'd).  The record of the telephone hearing shows that Davis's appellate counsel did not request Davis's presence for that hearing.  Nor was there an objection to Davis's absence.  Finally, Davis makes no showing or argument that he was harmed.  Assuming there was error in Davis's absence, Davis was not injured, and the assumed error is harmless beyond a reasonable doubt.  *See Carrion,* 926 S.W.2d at 629; *Aguero,* 818 S.W.2d at 133; *West,* 752 S.W.2d at 597.  We overrule the first issue.

The second issue complains of Judge Magre's grant of the Commission's motion for protective order, which asserted that the information sought from Bennett was constitutionally and statutorily confidential and privileged.  *See* TEX. CONST. art. V, § 1-a(10); TEX. GOV'T CODE ANN. § 33.032(a) (Vernon 2004).  We review that ruling for abuse

of discretion. *See General Tire, Inc. v. Kepple,* 970 S.W.2d 520, 525-26 (Tex. 1998); *Roberts v. West,* 123 S.W.3d 436, 440 (Tex. App.—San Antonio 2003, pet. denied); *see also Drew v. State,* 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987).

Again, the recusal motion's fourth ground sought recusal of the trial judge because Davis's trial counsel had provided an affidavit to the Commission at Bennett's request; that affidavit was attached to the recusal motion. The trial judge, who declined to recuse himself, was aware of the affidavit by its filing with the motion.

> [T]he invocation of a privilege, statutory or otherwise, will not prevent the disclosure of information when confronted with the fundamental principles of due process of law in the fair administration of justice. A presumption in favor of upholding the privilege against disclosure does exist. However, the presumption is rebutted by the *demonstration of the need and relevancy of the requested information*.

*Tex. Dep't Corrections v. Dalehite,* 623 S.W.2d 420, 423 (Tex. Crim. App. 1981) (emphasis added).

Given the allegation in the recusal motion's fourth ground, Davis has not demonstrated the need and relevancy of Bennett's testimony or the Commission's records relating to the trial judge. The only document relevant to the fourth ground is trial counsel's affidavit, and because it was attached to the recusal motion, the parties, the trial judge, and Judge Magre had it or access to it or awareness of it. Accordingly, we cannot say that Judge Magre abused his discretion in granting the motion for protective order. Issue two is overruled.

For the same reason we overrule issue three, which complains that Judge Magre abused his discretion in failing to conduct an in camera review of the Commission's

records, which Davis's appellate counsel did not request in the telephone hearing. Instead, a request was made that the Commission seal the records and send them to this court of appeals, and Judge Magre approved that request. The Commission sent us the sealed records. The proper procedure would have been for Judge Magre—not this court—to conduct an in camera review of the Commission records if such a review were warranted.

Because Davis has not demonstrated—before Judge Magre or in this appeal—the need and relevancy of the Commission's records (other than trial counsel's affidavit, which all had or were aware of) relating to the trial judge, Judge Magre did not err in failing to conduct an in camera review of the Commission's records.

### Voir Dire

In his fourth issue, Davis complains that the trial court abused its discretion by imposing a time limit on voir dire that prevented trial counsel from asking proper questions of prospective jurors. Davis was initially given ninety minutes for voir dire, and the record reflects that his counsel took around two hours. When the trial court refused to allow further voir dire, Davis's trial counsel stated three topics for which they sought additional voir dire time to cover: the impact of drugs on panel members; the panel's view on testimony by witnesses who had made deals with the State; and the panel's knowledge of any of the State's local witnesses. Trial counsel did not put on the record any questions that would have been asked.

When a party complains that the trial court erred in not allowing additional time for voir dire, a two-part test applies: (1) whether the complaining party attempted to

prolong the voir dire; and (2) whether the questions the party was not permitted to ask were proper voir dire questions. *See McCarter v. State*, 837 S.W.2d 117, 120 (Tex. Crim. App. 1992; *S.D.G. v. State*, 936 S.W.2d 371, 380 (Tex. App.—Houston [14th Dist.] 1996, writ denied). To preserve a complaint on the manner of voir dire, appellant must point to a question the trial court did not allow the panel to answer. *S.D.G.*, 936 S.W.2d at 380 (citing *Caldwell v. State*, 818 S.W.2d 790, 794 (Tex. Crim. App. 1991), *overruled on other grounds by Castillo v. State*, 913 S.W.2d 529, 533 (Tex. Crim. App. 1995)); *see also Cordova v. State*, 296 S.W.3d 302, 307 (Tex. App.—Amarillo 2009, pet. denied). Providing the trial court with topics or issues that counsel needs additional time to cover does not preserve the complaint for appellate review. *S.D.G.*, 936 S.W.2d at 380; *see also Cordova*, 296 S.W.3d at 307. Because Davis's trial counsel did not present questions that he can point to on appeal, the complaint has not been preserved and issue four is overruled.

### Sufficiency of the Evidence

Issues five, seven, and nine assert, respectively, that the evidence is legally insufficient to prove that Davis entered into a conspiracy to commit the robbery or burglary of Andrade, that capital murder should have been anticipated by Davis as a result of carrying out the conspiracy, and that the shooting of Andrade was in the furtherance of the unlawful purpose of the conspiracy. Issues six, eight, and ten assert that the evidence is factually insufficient on those same three elements.

*Standard of Review*

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the

Davis v. State                                                                                    Page 6

evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). Any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

> In reviewing the sufficiency of the evidence, we should look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Cordova v. State,* 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See Johnson v. State,* 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ("[i]t is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances."); *Barnes v. State,* 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); *Alexander v. State,* 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara,* 152 S.W.3d at 49. On appeal, the same standard of review is used for both circumstantial and direct evidence cases. *Id.*

> . . .

> Under the *Jackson* test, we permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions.

> . . .

> [C]ourts of appeals should adhere to the *Jackson* standard and

determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.

*Hooper v. State,* 214 S.W.3d 9, 13, 15-17 (Tex. Crim. App. 2007).

The Court of Criminal Appeals recently overruled *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) and factual-sufficiency review. *See Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The court held that the *Jackson v. Virginia* legal-sufficiency standard is the only standard a reviewing court should apply in determining the sufficiency of the evidence. *Id.* Because we cannot review the evidence for factual sufficiency, we overrule issues six, eight, and ten, and we will proceed to a legal-sufficiency review.

*Conspiracy to commit the robbery or burglary of Andrade*

The State presented evidence that Davis and his two sons, Chad Davis[1] and Trey Davis,[2] operated a major drug-trafficking operation. Chad was its leader, and Davis was the bookkeeper and also acted as a courier, using a tour bus and a fishing boat to transport drugs. Andrade was a fledgling rap-music producer and drug dealer. The evidence showed that Chad and Trey recruited three men, Boris Mogilevich, Bradley Padrick, and Jesse Mancuso, to recover $100,000 that Andrade had allegedly stolen from Chad during a recent drug deal in Houston.

---

[1] We affirmed Chad Davis's conviction for the capital murder of Andrade in 2008. *See Davis v. State,* 276 S.W.3d 491, 502 (Tex. App.—Waco 2008, pet. ref'd). Like his father, Chad was convicted on the State's conspiracy theory. *See id.* at 494-97.

[2] Trey Davis received plea-bargained convictions for the same underlying robbery and burglary, agreeing to two consecutive twenty-year prison sentences. *See Davis v. State,* 205 S.W.3d 606, 606 (Tex. App.—Waco 2006, no pet.).

On the night in question (August 7, 2003), with Chad and Trey in a separate vehicle parked a half-mile away, the three assailants went to Andrade's home, kicked in the door, and began asking him for the stolen money. They told Andrade that he was coming with them, and as Andrade was putting his shoes on, he was able to grab a gun and began shooting, hitting both Mogilevich and Padrick and killing Mancuso. After Mogilevich was shot, he shot and killed Andrade. Mogilevich and Padrick then fled the scene, leaving Mancuso behind. Chad and Trey took them to a motel, and Davis arrived soon thereafter in the tour bus. After treating Mogilevich and Padrick, Davis drove them to Atlanta in the tour bus. Information on Mancuso's body eventually led police to the Davises.

Issue five asserts that the evidence is legally insufficient to prove that Davis entered into a conspiracy to commit the robbery or burglary of Andrade. He argues that the evidence shows that he only had knowledge of the conspiracy, that there is no direct evidence he was a part of the conspiracy, and that any inferences that he was part of the conspiracy are irrational or unreasonable.

> A person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. TEX. PEN. CODE ANN. §§ 19.02(b)(1), 19.03(a)(2) (Vernon 2003 & Supp. 2008). If, in an attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy. *Id*. § 7.02(b) (Vernon 2003); *see Hooper v. State*, 255 S.W.3d 262, 265-66 (Tex. App.—Waco 2008, no pet.). Each conspirator is guilty of the resulting offense, even if he did not intend to commit it or intend that it be committed. *Ruiz v. State*, 579 S.W.2d 206, 209 (Tex. Crim. App. 1979); *see also Fuller v. State*, 827 S.W.2d

919, 932 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 922; *Love v. State*, 199 S.W.3d 447, 453 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("a defendant in a capital murder case may be convicted solely on a conspiracy theory of culpability contained in the jury charge"); *Hanson v. State*, 55 S.W.3d 681, 691 (Tex. App.—Austin 2001, pet ref'd).

*Davis v. State*, 276 S.W.3d 491, 494-95 (Tex. App.—Waco 2008, pet. ref'd); *see also Ervin v. State*, --- S.W.3d ---, ---, 2010 WL 3212095, at *6-7 (Tex. App.—Houston [1st Dist.] Aug. 11, 2010, pet. ref'd); *Love v. State*, 199 S.W.3d 447, 452 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

An agreement constituting a conspiracy may be inferred from acts of the parties. Tex. Pen. Code Ann. § 15.02(a) (Vernon 2003). Direct evidence of a formal agreement to conspire is not required. *Turner v. State*, 720 S.W.2d 161, 164-65 (Tex. App.—San Antonio 1986, pet. ref'd).

> In determining whether the accused participated as a party, the court may look to events occurring before, during, and after the commission of the offense. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). …

> Since an agreement between parties to act together in common design can seldom be proven by words, the State often must rely on the actions of the parties, shown by direct or circumstantial evidence, to establish an understanding or a common design to commit the offense. *Miller v. State*, 83 S.W.3d 308, 314 (Tex. App.—Austin 2002, pet ref'd); *see Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977) (circumstantial evidence sufficient to show guilt as party). The agreement, if any, must be made before or contemporaneous with the criminal event, but in determining whether one has participated in an offense, the court may examine the events occurring before, during, and after the commission of the offense. *Beier v. State*, 687 S.W.2d 2, 3–4 (Tex. Crim. App. 1985); *Miller*, 83 S.W.3d at 314.

*Ervin*, --- S.W.3d at ---, 2010 WL 3212095, at *7.

The State asserts that the following evidence is legally sufficient to show that

Davis entered into the conspiracy to burglarize and rob Andrade:

- Davis, his sons, and the others in the conspiracy were drug dealers who dealt in large amounts of cash and carried guns. Guns were found in Davis's home and in vehicles at his home.

- Davis was integrally involved in the drug dealing as the bookkeeper, keeping track of drug transactions and paying bills (including for many cell phones), and he transported drugs in the tour bus and while pulling the boat on a trailer, including to Houston, Atlanta, and Florida.

- After Andrade had robbed Chad in Houston, Davis arrived soon thereafter and talked with Chad.

- In the week before the invasion of Andrade's home, Padrick and Mogilevich were at Davis's house, staying in the tour bus the entire week. Mancuso's mother testified that he called her the day before and said he was staying on an "incredible bus."

- Trey bought an old car from Travis Crockett for the three assailants to use for going to Andrade's home, and it was paid for and kept at Davis's house.

- The day before the murder, Crockett was at Davis's house for a couple of hours and saw an array of guns in Trey's bedroom. Trey and Chad were in the room, and Crockett overhead them planning the visit to Andrade's home. One of them said, "If guns off, they go off."

- After Mogilevich and Padrick were taken to a motel, Davis showed up in the tour bus with first aid items, bandages, pain medication, and clean clothes. Davis helped treat Mogilevich and Padrick, and all of the bloody clothes and motel bedding were put in a trash bag that was put on the bus. Davis drove Mogilevich and Padrick nonstop to Atlanta.

- Once in Atlanta, Davis met T.J. Parent, an Atlanta-area drug dealer, at a Wal-Mart parking lot, and Parent arranged for hotel rooms for Mogilevich and Padrick. He also got his mother and an associate's mother, both of whom were nurses, to come to the hotel to treat Mogilevich and Padrick.

- Parent's mother, Sandra Albably, was upset when she saw Mogilevich and Padrick, refused to treat them, and said they needed to go to a hospital or she would call 9-1-1. Parent then drove her to the bus, where she met Davis. She complained to Davis for driving them to Atlanta and not getting them medical help, and he replied, "I told my boys this would happen. I was just waiting for

that call. I knew this was going to happen."

- An analysis of the cell phone bills showed that Davis called Chad from Atlanta forty-three times.

- A law-enforcement officer investigating Andrade's murder asked Davis where the tour bus was on August 7, and Davis said it was at his home, but a Louisiana state trooper had spotted it near Rustin, heading east.

- Davis got a message to Kim Weathers to tell Marte Fox, Chad's girlfriend, to keep a low profile if she did not want to be involved in the trial.

- While the Sheriff's department was executing a search warrant at Davis's home and a person was being questioned, a deputy saw Davis put his finger to his lips and shake his head side to side, indicating to the person to keep quiet.

Viewing the evidence in the light most favorable to verdict, a rational jury could have found that Davis, acting as a conspirator under the law of parties, entered into the conspiracy to rob and burglarize Andrade. While there was no direct evidence, the jury could reasonably infer from the above evidence that Davis entered into the conspiracy. We overrule issue five.

*Murder should have been anticipated as a result of carrying out the conspiracy*

Issue seven asserts that the evidence is legally insufficient to prove that capital murder should have been anticipated by Davis as a result of carrying out the conspiracy. He argues that there was no direct evidence that he knew the three assailants took weapons with them to Andrade's home, and he primarily relies on *Tippitt v. State*, 41 S.W.3d 316 (Tex. App.—Fort Worth 2001, no pet.), which the Court of Criminal Appeals has disapproved. *See Hooper*, 214 S.W.3d at 15.

> [T]he State does not have to prove that the accused intended to shoot or kill the victim, or intended that the victim be shot, as long as the evidence established he conspired to commit the robbery and that he

"should have anticipated the murder as a result of carrying out the conspiracy to commit the robbery. *Moore v. State*, 24 S.W.3d 444, 447 (Tex. App.—Texarkana 2000, pet. ref'd).

Evidence that a defendant knew his co-conspirators might use guns in the course of the robbery can be sufficient to demonstrate that the defendant should have anticipated the possibility of murder occurring during the course of the robbery. *See Hooper*, 255 S.W.3d at 266; *see also Love*, 199 S.W.3d at 453 (holding evidence was sufficient to show murder was committed in attempt to carry out robbery and should have been anticipated by appellant when appellant helped plan robbery and knew that firearms would be used).

*Davis*, 276 S.W.3d at 495; *see also Love*, 199 S.W.3d at 453 n.1.

The State points again to the guns-and-drugs environment that Davis was a part of, that the gunmen stayed on the tour bus at Davis's home, and that the guns were passed out there. Most importantly, the State points out Davis's statement to Albably after she had chastised him for not getting medical care for the gunshot victims: "I told my boys this would happen. I was just waiting for that call. I knew this was going to happen." In the context of the conversation, "this" can only be a reference to the shootings, and it is direct evidence that Davis knew guns were being taken to Andrade's home.

Viewing the evidence in the light most favorable to the verdict, a rational jury could have found that that capital murder should have been anticipated by Davis as a result of carrying out the conspiracy. We overrule issue seven.

*Shooting of Andrade was in the furtherance of the unlawful purpose of the conspiracy*

Issue nine asserts that the evidence is legally insufficient to prove that the shooting of Andrade was in the furtherance of the unlawful purpose of the conspiracy.

Davis contends that the evidence shows only a conspiracy to rob and burglarize Andrade, not murder him, which merely begs the "furtherance" question.

The State reiterates the evidence pertaining to the gun culture within drug trafficking, the Davises' guns, and the statement by one of Davis's sons, "If guns off, they go off." And again, the jury heard Albably testify that Davis told her, "I told my boys this would happen. … I knew this was going to happen." Viewing the evidence in the light most favorable to the verdict, a rational jury could have found that the shooting of Andrade was in the furtherance of the unlawful purpose of the conspiracy. We overrule issue nine.

**Extraneous-Offense Evidence**

Issues eleven through twenty-two complain that the trial court abused its discretion in admitting twelve items of extraneous-offense evidence. The State contends that the extraneous-offense evidence was properly admitted as same-transaction contextual evidence.

"Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009) (quoting *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). We review a trial court's ruling on the admissibility of extraneous offenses under an abuse-of-discretion standard. *Id.* As long as the trial court's ruling is within the "zone of reasonable disagreement," it will be upheld. *Id.*

Under Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity

therewith." Tᴇx. R. Evɪᴅ. 404(b). However, it may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *De La Paz*, 279 S.W.3d at 342-43. The rule excludes only that evidence that is offered solely for the purpose of proving bad character and conduct in conformity with that character. *Id.* at 343. In addition, evidence admissible under rule 404(b) may nonetheless be excluded if the trial judge determines that its probative value is substantially outweighed by the danger of unfair prejudice. Tᴇx. R. Evɪᴅ. 403; *Mozon v. State*, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999).

An exception to rule 404(b) exists in that extraneous offenses may be admissible as same-transaction contextual evidence when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction." *Prible v. State*, 175 S.W.3d 724, 731-32 (Tex. Crim. App. 2005) (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). This type of evidence results when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case difficult to understand or incomplete. *Id.* at 732. Same-transaction contextual evidence is "admissible to show the context in which the criminal act occurred." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "[E]vents do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence." *Id*.

> There are two types of contextual evidence: (1) evidence of other offenses connected with the primary offense, referred to as same transaction contextual evidence; and (2) general background evidence,

referred to as background contextual evidence. *Mayes v. State,* 816 S.W.2d 79, 86-87 (Tex. Crim. App. 1991). Same transaction contextual evidence is admissible as an exception under Rule 404(b) where such evidence is necessary to the jury's understanding of the charged offense. *See Wyatt,* 23 S.W.3d at 25; *Rogers v. State,* 853 S.W.2d 29, 33 (Tex. Crim. App. 1993). Extraneous conduct is considered to be same transaction contextual evidence when the charged offense would make little or no sense without also bringing in the same transaction evidence. *Rogers,* 853 S.W.2d at 33. Such evidence provides the jury information essential to understanding the context and circumstances of events that are blended or interwoven. *Camacho v. State,* 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).

The purpose of admitting same transaction contextual evidence is not to show that the extraneous charged offenses are part of a common scheme or that the charged offense was committed in an identical signature manner. *Jones v. State,* 962 S.W.2d 158, 166 (Tex. App.—Fort Worth 1998, no pet.). Nor is the purpose to show that appellant committed the charged offense merely because he also committed the extraneous offense. *Id.* Rather, the purpose of admitting extraneous evidence as same transaction contextual evidence is to put the instant offense in context. *Id.; Mayes,* 816 S.W.2d at 86-87; *Camacho,* 864 S.W.2d at 532.

*Swarb v. State,* 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd).

The evidence that Davis complains about can be divided into two categories: guns and cash, and drug transactions and drug use.

*Guns and Cash*

The evidence and issues are:

- Chad's semi-automatic rifle (issue 11) and a magazine loaded with five rounds (issue 12), seized at Chad's home when he was arrested.

- Numerous photographs of money and guns seized at Chad's home (issue 16).

- Trey's assault rifle, found in his bedroom in Davis's home (issue 17), and an invoice and receipt for that rifle (issue 18), showing that it was purchased the day before the offense.

- Travis Crockett's testimony about Trey's lifestyle with multiple vehicles (issue 21).

- Cash and ammunition found on the tour bus (issue 22).

Much evidence was presented that drug dealers are concerned about being robbed of their drugs and money, and they thus possess and carry weapons. The State asserts that the motive for the conspiracy was to retrieve money from Andrade and to retaliate for Andrade's $100,000 robbery of Chad. We agree that, to put the conspiracy offense in context, evidence that the Davises were drug dealers who dealt in large amounts of cash and with guns to protect their drugs and cash was necessary. Because this category of evidence was same-transaction contextual evidence and background contextual evidence, the trial court did not abuse its discretion in admitting this evidence. Issues 11, 12, 16, 17, 18, 21, and 22 are overruled.

*Drug Transactions and Drug Use*

The evidence and issues are:

- Jason Bishop's testimony about two prior drug transactions in Georgia in which Davis, Chad, and Trey were selling drugs to Bishop and then to Bishop's friend Mike, and the drugs had been transported to Georgia hidden in the boat that was pulled by a vehicle driven by Davis, who helped take the drugs out of the boat and give them to Bishop (issue 13).

- Leonard Luna's testimony about his large-volume drug business with Chad several years before the offense (issue 14).

- Chad's calendar showing drug transactions, including transactions with Davis (issue 15).

- Marte Fox's testimony about the Houston drug deal where Andrade robbed Chad and Davis showed up soon thereafter (issue 19).

- Leslie Leshe's testimony about smoking marijuana with Trey at Davis's

home and about marijuana kept in the freezer there, along with Davis's cigarettes (issue 20).

The State sought to show that Davis was an active participant with Chad and Trey in a large-volume and dangerous drug business—and not just an after-the-fact bus driver—to explain why Davis would have entered into the conspiracy with his sons to rob Andrade. The trial court did not abuse its discretion in admitting this evidence; it too was same-transaction contextual evidence and background contextual evidence that put in context the conspiracy offense that Davis was charged with. Issues 13, 14, 15, 19, and 20 are overruled.

Davis alleges in issues twenty-three through thirty-four that the same twelve items of evidence should have been excluded because its prejudicial effect outweighed its probative value. *See* TEX. R. EVID. 403.

> In its seminal decision in *Montgomery v. State*, the Court of Criminal Appeals identified four non-exclusive factors to be considered in determining whether evidence should be excluded under Rule 403. Those factors were: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and, (4) the proponent's need for the evidence.

> More recently, the Court has looked to the language of Rule 403 and restated the pertinent factors.

> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already

admitted. Of course, these factors may well blend together in practice.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnotes omitted).

*Newton v. State*, 301 S.W.3d 315, 319 (Tex. App.—Waco 2009, pet. ref'd) (footnote and citations omitted).

"Rule 403 'envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Id.* at 322-23 (quoting *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009)). In this case, given the State's need for circumstantial evidence to prove that Davis entered into the conspiracy to rob Andrade, and after considering the above factors, we cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by this evidence and its probative value. Thus, the trial court did not abuse its discretion by overruling Davis's rule 403 objections. We overrule issues twenty-three through thirty-four.

*Limiting Instruction*

Issues thirty-five through forty-five complain of the trial court's refusal to give a limiting instruction when the complained-of (and other[3]) extraneous-offense evidence was offered.

Rule 105 of the Texas Rules of Evidence requires a limiting instruction, upon proper request, when evidence is admitted for one purpose but is not admissible for another purpose. TEX. R. EVID. 105(a); *see*

---

[3] A Louisiana state trooper testified that he had spotted the tour bus near Rustin, heading east, and had run a license check on it. Davis requested a limiting instruction regarding Davis's transporting Mogilevich and Padrick to Atlanta on the tour bus.

*also Rankin v. State,* 974 S.W.2d 707, 713 (Tex. Crim. App. 1996). Because evidence of extraneous acts is admissible for some purposes but inadmissible for others, on request, the accused is entitled to a mid-trial limiting instruction addressing extraneous offense evidence. *Rankin,* 974 S.W.2d at 711-12.

The trial court is not required, however, to give a limiting instruction for same transaction contextual evidence. *See Castaldo v. State,* 78 S.W.3d 345, 352 (Tex. Crim. App. 2002); *Wesbrook,* 29 S.W.3d at 114-15; *Camacho,* 864 S.W.2d at 535.

*King v. State,* 189 S.W.3d 347, 356-57 (Tex. App.—Fort Worth 2006, no pet.); *see Glockzin v. State,* 220 S.W.3d 140, 151 (Tex. App.—Waco 2007, pet. ref'd). Because the evidence at issue is same-transaction contextual evidence, the trial court did not abuse its discretion in refusing to give limiting instructions. We overrule issues thirty-five through forty-five.

## Jury Charge

Issue forty-six complains that the charge's application paragraph erroneously instructed the jury that it could convict Davis of capital murder if it found beyond a reasonable doubt that the shooting—not capital murder— should have been anticipated by Davis as a result of the carrying out of the conspiracy. *See* TEX. PEN. CODE ANN. § 7.02(b). Thus, Davis alleges, the State's burden of proof was lessened. In analyzing a jury-charge issue, we first decide whether error exists. *Ngo v. State,* 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

The abstract portion of the charge stated:

Therefore, before you can find a person guilty of capital murder as a conspirator, you must find beyond a reasonable doubt that the capital murder was an offense committed in furtherance of the unlawful purpose and that should have been anticipated by the defendant as a result of

carrying out the conspiracy.

The indictment alleged that Davis committed capital murder by shooting Andrade while in the course of committing or attempting to commit the offenses of burglary of a habitation and aggravated robbery. The State argues that because the indictment alleged the shooting, it was necessary for the application paragraph, which applied the law to the facts, to refer to the shooting that Davis should have anticipated. We agree and find no error. Issue forty-six is overruled.

## Jury Argument

In issue forty-seven, Davis alleges that the trial court erred by overruling his objection that the prosecutor commented on Davis's failure to testify at trial. Jury argument is limited to: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answers to argument of opposing counsel; or (4) a plea for law enforcement. *Guidry v. State,* 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Sandoval v. State,* 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). A comment on an accused's failure to testify violates the accused's state and federal constitutional privileges against self-incrimination. *Bustamante v. State,* 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). To determine whether a party's argument properly falls within one of these categories, we must consider the argument in light of the entire record. *Sandoval,* 52 S.W.3d at 857.

Davis's defensive theory, which his attorney argued, was that, after the shootings, he agreed to drive the injured assailants to Georgia, and that he had not entered into the conspiracy to rob Andrade beforehand. In rebuttal, the State argued in

part that Davis did more than drive the injured to Georgia and mentioned how, before trial, Davis got a message to Marte Fox to keep a low profile. The prosecutor then added: "That's someone who's afraid to respond to 12 good citizens with the truth." The trial court overruled Davis's objection that this statement commented on his failure to testify.

> It is well settled that a prosecutor's comment amounts to a comment on a defendant's failure to testify only if the prosecutor manifestly intends the comment to be, or the comment is of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify. *United States v. Jefferson,* 258 F.3d 405, 414 (5th Cir. 2001); *Bustamante v. State,* 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). It is not sufficient that the comment might be construed as an implied or indirect allusion to the defendant's failure to testify. *Bustamante,* 48 S.W.3d at 765.

*Wead v. State,* 129 S.W.3d 126, 130 (Tex. Crim. App. 2004).

We first find that the statement could only be construed as an implied or indirect allusion to the defendant's failure to testify, which is insufficient to serve as a comment on Davis's failure to testify. Further, the prosecutor's statement was, as a response to the defense argument that all Davis did was drive the bus to Georgia, not improper because the statement was linked to Davis's attempt to silence a witness who would testify about matters occurring before the shooting. *See Albiar v. State,* 739 S.W.2d 360, 362 (Tex. Crim. App. 1987) ("If the defense counsel invites argument, as is the case here, then it is appropriate for the State to respond."). Finally, because the statement related to Davis's attempt to possibly keep Fox from testifying, it was a reasonable deduction from the evidence. The trial court did not err in overruling Davis's objection, and we overrule issue forty-seven.

**Disclosure of Exculpatory Evidence**

In issue forty-eight, his final issue, Davis complains that the trial court abused its discretion in denying his motion for new trial based on the State's alleged tardy disclosure of possible exculpatory evidence. On the last day of testimony, the prosecution told defense counsel that Mogilevich, who had recently been captured, had stated that, after he had been shot by Andrade (including a graze wound to his head), he had blood on his face, raised his pistol, and shot Andrade.[4] Davis asserts that Mogilevich's statement is exculpatory because it raises a question on his intent to kill.

Davis initially requested a continuance but then withdrew that request and sought a mistrial. The State argues that by abandoning the continuance request, Davis has procedurally defaulted his claim that the State belatedly disclosed exculpatory evidence. We agree. *See Wilson v. State,* 7 S.W.3d 136, 146 (Tex. Crim. App. 1999).

Having overruled all of Davis's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Justice Davis and
    Judge Gallagher[5]

---

[4] In voir dire, one of Davis's attorneys referenced that Mogilevich had been shot in the head and had blood on his face, and based on that, a lesser-included murder charge would be requested. Moreover, several witnesses testified that Mogilevich's face was bloody, and that fact came out in the testimony in Chad's trial, which defense counsel was aware of.

[5] The Honorable George Gallagher, Judge of the 396th District Court, sitting by assignment of the Chief Justice of the Supreme Court of Texas pursuant to section 74.003(a) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(a) (Vernon 2005).

Affirmed
Opinion delivered and filed February 2, 2011
Do Not Publish
[CRPM]

---

The Honorable Felipe Reyna, a former justice on this court, was on the panel and present for argument, but having left office on December 31, 2010, he did not participate in this decision. *See* TEX. R. APP. P. 41.1(c).