

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00366-CR

**BEVERLY LATIMER,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 13th District Court
### Navarro County, Texas
### Trial Court No. 31,022

## O P I N I O N

Beverly Latimer was convicted by a jury of capital murder and automatically received a sentence of imprisonment for life without the possibility of parole. TEX. PEN. CODE ANN. §§ 19.03; 12.31 (Vernon 2005). Latimer complains that the trial court erred by denying her motion for continuance, by allowing expert testimony, by admitting prejudicial photographs, by allowing the testimony of a witness, and that the evidence was both legally and factually insufficient for the jury to have found her guilty of capital murder. Because we find no abuse of discretion regarding the continuance, the expert testimony, or the admission of photographs, that the issue regarding the witness

testimony was waived, and that the evidence was legally and factually sufficient, we affirm the judgment of the trial court.

*Motion for Continuance*

We review a trial court's ruling on a motion for continuance for abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996). To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his or her motion. *Gallo*, 239 S.W.3d at 764; *Janecka*, 937 S.W.2d at 468. A bare assertion that counsel did not have adequate time to prepare for trial is not sufficient proof of prejudice. *See Renteria v. State*, 206 S.W.3d 689, 702 (Tex. Crim. App. 2006); *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995).

Latimer personally filed a hand-written motion for continuance on September 5, 2008, after the start of jury selection. Her motion stated that she did not feel that her attorneys were ready because they had not had adequate time to review their expert's report that had been received on September 1, 2008, because her attorneys had been advising her that they needed three to four weeks to review the report when received. It is apparent that Latimer's attorneys had difficulty in receiving necessary items for testing from the forensic laboratory and a medical center that had those items in their custody or control, and those items were not fully received until sometime in August of 2008. We note, however, that they did not first request those items until March of 2008, which was approximately a year and a half after Latimer's arrest. Additionally, at the

hearing on the motion for continuance, Latimer's attorneys did not request more time to prepare, but allowed Latimer to testify as to why she felt a continuance was needed.

During the trial, Latimer's attorneys cross-examined the State's witnesses vigorously and Latimer's own expert testified at trial beginning on September 16, 2008. They did, however, for the first time, list things they would have done if given more time at the motion for new trial hearing. The record does not demonstrate that Latimer was prejudiced by the denial of her motion. The trial court did not abuse its discretion in denying Latimer's motion. We overrule issue one.

*Expert Witness Testimony*

Latimer complains that the trial court erred by allowing Dr. Jayme Coffman, an expert for the State, to testify as to the cause of death of the child because she was not an expert in the field of pathology. Dr. Coffman had been the medical director at Cook Children's Medical Center since January of 2000. She was board certified in pediatrics in 1991, and had extensive experience in dealing with child abuse victims on a daily basis, some of whom had died as a result of their injuries. She testified as to her methodology for determining whether a particular injury was the result of abuse or maltreatment, which included interviews with all relevant people and a review of any internal testing conducted, including CT's, MRI's, and skeletal surveys. She had extensive training and attended many seminars and would read any literature available on the subject of child abuse. She had also studied autopsies and literature regarding autopsies. If she had a child patient who died, she would follow through and speak with the medical examiner, and conduct a fatality review. Dr. Coffman had seen many

autopsies with similar injuries as to those of the child in this case, and was experienced in interpreting pictures and autopsy reports.

Dr. Coffman testified that she had spoken with the medical examiner several times, had reviewed the autopsy report and photographs, reviewed all of the medical records including those from prior injuries, and reviewed all of the foster care and historical documentation regarding the child's psychological and developmental health.

We review the admission of expert testimony for an abuse of discretion. *Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992). Rule 702 of the Texas Rules of Evidence governs the admission of expert testimony. *See* TEX. R. EVID. 702. Rule 702 states,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

TEX. R. EVID. 702.

Thus, before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his or her knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006) (*citing Alvarado v. State*, 912 S.W.2d 199, 215-16 (Tex. Crim. App. 1995).

Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case. *See Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992); *Steve v. State*, 614 S.W.2d 137, 139 (Tex. Crim. App. 1981). For this reason, we rarely disturb the trial court's determination that a specific witness is or is not qualified to testify as an expert. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000) ("The question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion. Absent a clear abuse of that discretion, the trial court's decision to admit or exclude testimony will not be disturbed."). We do not find that based on Dr. Coffman's qualifications that the trial court abused its discretion by allowing the testimony. We overrule issue two.

*Admission of Evidence*

Latimer complains that the trial court erred by admitting two photographs of the child taken after he was deceased because their prejudicial value substantially outweighed their probative value. *See* TEX. R. EVID. 403. We review the admission of evidence for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2004); *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004).

As a general rule, a photograph is admissible if verbal testimony regarding what is depicted in the photograph is also admissible and the probative value of the photograph is not substantially outweighed by any of the factors we use in a rule 403

analysis. *Threadgill v. State*, 146 S.W.3d 654, 671 (Tex. Crim. App. 2004); *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997); *Long v. State*, 823 S.W.2d 259, 271 n.18 (Tex. Crim. App. 1991). Rule 403 of the rules of evidence favors the admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial. *Shuffield*, 189 S.W.3d at 787; *Long*, 823 S.W.2d at 271. An abuse of discretion arises only when the probative value of the photographs is small and its inflammatory potential is great. *Long*, 823 S.W.2 at 271.

In determining whether the trial judge erred in admitting a certain photograph, we first consider the form, content, and context of the photograph. *Erazo v. State*, 144 S.W.3d 487, 492 (Tex. Crim. App. 2004); *Long*, 823 S.W.2d at 271-73 (court should consider number of exhibits offered; gruesomeness, detail, and size of photographs; whether photographs are black and white or in color; whether they are close-up; whether body is naked or clothed; and availability of other means of proof and circumstances unique to each individual case). We then consider (1) the probative value of the evidence; (2) the ability of the photograph to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Shuffield*, 189 S.W.3d at 787; *Erazo*, 144 S.W.3d at 492-96.

There were fifteen color photographs taken of the child at the hospital after his death admitted into evidence through one of the responding paramedics. They were approximately 8" by 11" in size. Some were close up, some were not. Latimer complains of the admission of only two of the photographs.

The complained-of photographs show certain injuries sustained by the victim and were offered at the end of the State's direct examination. The first complained-of photograph depicts the child at the hospital taken shortly after his death with the child's eyes open and shows bruising on the child's body, including his chest and face. The second complained-of photograph depicts the child after death with his arm straightened out which shows a slight bruise on the arm and also the child's face with his eyes open.

Although the photographs depict gruesome details, they are no more gruesome than the facts of this case. *See Shuffield*, 189 S.W.3d at 788 (photographs only showed victim's injuries and were no more gruesome than expected); *Sosa v. State*, 230 S.W.3d 192, 196 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (prejudice caused by photographs did not substantially outweigh their probative value; photographs were no more gruesome than facts of the offense).

Furthermore, we conclude the photographs provided a necessary visual component to, and understanding of, the paramedics' testimony regarding what they observed regarding the nature and extent of the victim's injuries. Both of the responding paramedics testified that the child's pupils were "blown," that the child had bruising on his chest with an unknown origin, and had what was described as a hand stripe bruise on his arm. These injuries were in addition to the "battle" bruising behind the child's ear, the dehydrated appearance of his lips and gums, the multiple areas of bruising on the child's head, face, arms, and legs depicted in the other photographs, of which Latimer does not complain. The photographs were probative because they

showed the full extent and arguably non-accidental nature of a number of those injuries. *See Gallo*, 239 S.W.3d at 763; *Salazar*, 38 S.W.3d at 147-53. Thus, they were necessary for the State to develop its case.

When considered in light of the facts of this case, we conclude the autopsy photographs are not overly prejudicial and did not pose the danger of influencing the jury in an irrational way. The State spent little time authenticating the photos through that witness. Accordingly, the trial court did not abuse its discretion by admitting the autopsy photographs. We overrule issue three.

*Admission of Witness Testimony*

Latimer complains that the trial court erred by allowing testimony regarding an incident that had occurred in a grocery store some time the week before the child's death that involved Latimer allegedly requiring the young children, ages approximately four and five, in the store with her to keep their hands on the grocery cart at all times. The witness observed Latimer get angry with one child when she took her hands off of the cart. The child went backward and knocked over some chili.[1] Latimer grabbed the child and the child had to put her hands back on the cart. The child was crying, although not audibly. The children kept their hands on the cart throughout their conversation, which lasted approximately thirty minutes.

---

[1] The record is not clear as to what precisely fell over in the testimony, whether it was a display, a single can, or multiple cans of chili.

Latimer complains that this testimony was inadmissible because it did not allege a bad act; that she did not receive the required notice of the extraneous offense or bad act; and that its probative value was substantially outweighed by its prejudicial effect.

Latimer does not present any authority relating to her arguments on appeal as to why the act does not constitute a bad act or why the State's notice was inadequate. The sole legal reference in this entire issue is a regurgitation of rule 404(b). This is insufficient. In order to properly present an issue to this Court, citations to appropriate authorities is required. *See* TEX. R. APP. P. 38.1(h). Therefore, this issue is inadequately briefed, and therefore, is waived. *See Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) ("It is incumbent upon appellant to cite specific legal authority and to provide legal arguments based upon that authority."). We overrule issue four.

### Legal and Factual Sufficiency

Latimer complains that the evidence was both legally and factually insufficient for the jury to have found that she caused the death of the child because there was competing testimony regarding the timing of the head injury or injuries and inconsistencies in the testimony of certain of the State's witnesses.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Furthermore, we must consider all the evidence admitted at trial, even

improperly admitted evidence, when performing a legal sufficiency review. *Clayton*, 235 S.W.3d at 778; *Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing an actor's guilt. *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414-15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually

sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that we "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided the question differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008). A factual sufficiency review of circumstantial evidence is the same as a review of direct evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000); *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999) (reasoning that "[c]ircumstantial evidence, by itself, may be enough to support the jury's verdict").

It is undisputed by the testifying experts, both for the State and Latimer that the child died from blunt force trauma to the head. The medical examiner and Dr. Coffman

both testified that the blunt force trauma could not have occurred days before the child's death because of the severity of the injury to the child's brain. The child did not exhibit any symptoms or odd behavior on the days before and the morning of his death. Latimer was the only adult present the morning of the child's death. Latimer made statements to various sources around the time of the child's death that the child had gotten out of his play yard more than once that morning, and while she was cooking lunch, that she was exhausted because the child would get out of his play yard at night, and that the child was clingy and required a lot of one on one attention. Other witnesses described the angry and harsh treatment of the deceased child and the other children in her home. We find that the evidence was legally sufficient for the jury to have found beyond a reasonable doubt that Latimer caused the child's death.

Latimer contends that statements by the two paramedics, the nurse who treated the child at the hospital, and a social worker who placed the child with Latimer gave different details at trial from that which were in written and oral statements given before trial. Latimer contends that these inconsistencies, taken with their expert's testimony that the child's brain injury occurred prior to the child's placement in Latimer's home render the evidence factually insufficient. However, it is the province of the jury to determine the credibility of the witnesses. *Johnson*, 23 S.W.3d at 9. We cannot say that the evidence was so weak that the fact-finder's determination is clearly wrong and manifestly unjust or that the conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly

unjust. *See Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414-15, 417. We overrule issue five.

*Conclusion*

We find no abuse of discretion by the trial court by denying Latimer's motion for continuance. We also find no abuse of discretion by the trial court in the admission of the expert testimony by Dr. Coffman or in the admission of the two photographs. We find the issue regarding the testimony of the witness regarding an extraneous offense or bad act to have been waived due to inadequate briefing. The evidence was both legally and factually sufficient to sustain the conviction. We affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Justice Davis joins the opinion in part and concurs in part. Justice Davis joins the Court on overruling issues one, two, three and five. Justice Davis concurs in overruling issue four on the briefing of appellant and appellee and does not find the briefing inadequate and thus, the issue not waived.)
Affirmed
Opinion delivered and filed April 28, 2010
Publish
[CRPM]