

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00137-CR

**SANTOS SANCHEZ,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 36194CR

## MEMORANDUM  OPINION

The jury convicted Santos Sanchez of the felony offense of driving while intoxicated and assessed his punishment at five years confinement.  We affirm.

**Sufficiency of the Evidence**

In the second issue on appeal, Sanchez argues that the evidence is insufficient to support his conviction.  The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert den'd* , 132 S.Ct. 2712, 183 L.Ed.2d 71 (2012).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

On July 15, 2011, Bill and Joyce Houk were at their home, and Bill's occupational therapist, David Worley, was also at their home. Bill saw a delivery truck coming up their driveway, and Joyce went out to see who was in the truck. Joyce testified that when she approached the truck, Sanchez was sitting in the driver's seat. Joyce asked Sanchez if she could help him, and he responded that he was looking for her. Joyce said that Sanchez was confused and disoriented and that she was concerned for his safety. She went to get Bill and Worley to assist. Worley felt that Sanchez needed medical attention, and Joyce called 9-1-1.

Andrew Cochran, a firefighter and paramedic with the Midlothian Fire Department, testified that he was dispatched to the scene. Cochran stated that Sanchez was in the driver's seat and that he appeared to be asleep. Cochran said that Sanchez became confrontational, and the paramedics called for assistance from the sheriff's office. Cochran testified that during the evaluation, Sanchez stated that he had "2 beers." Sanchez said that he was driving the delivery truck and he got tired and pulled over. The paramedics at the scene did not find anything medically wrong with Sanchez, but they did not feel he was able to safely drive the truck and leave the scene.

Officer John Killian, with the Midlothian Police Department, testified that he was dispatched to the scene to assist the paramedics until the Ellis County Sheriff's Office could arrive. Officer Killian testified that he was there to keep the peace and not to investigate a criminal offense. Officer Killian did speak with Sanchez, and he testified that Sanchez was disoriented and confused.

Deputy Joshua Atilano with the Ellis County Sheriff's Office arrived at the scene and spoke with the paramedics and Officer Killian. Deputy Atilano then spoke with Sanchez, and Sanchez was unable to provide his date of birth. Deputy Atilano testified that Sanchez's speech was slurred, that he was unsteady, and that he had a strong odor of alcohol on his person. Deputy Atilano attempted to perform field sobriety tests, but Sanchez was unable to complete the first part of the test. Deputy Atilano felt that Sanchez was too unsteady to attempt the other tests. Sanchez was placed under arrest. Sanchez was later taken to a medical center for a blood draw, and his alcohol concentration was 0.31.

Sanchez testified at trial that he was not driving the delivery truck and that a female was the driver. Sanchez and the female argued, and she left the scene. Sanchez moved to the driver's seat before Joyce came outside. Sanchez testified that he had a 40 ounce beer on the day of the offense.

Sanchez specifically argues that the evidence is insufficient to show that he operated the motor vehicle. Bill Houk saw someone driving the delivery truck on his driveway, and his wife went outside. Joyce saw Sanchez in the driver's seat of the truck, and she did not see anyone leaving the scene. Cochran testified that Sanchez told him he was driving and pulled over when he got tired. Viewing all of the evidence, we find that a rational trier of fact could have found that Sanchez committed the offense of driving while intoxicated. We overrule the second issue.

## Expert Testimony

In the first issue, Sanchez argues that the trial court erred in allowing the State to introduce expert testimony on alcohol consumption and absorption rates because that testimony was outside the State's notice of experts. We review the admission of expert testimony for an abuse of discretion. *Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992); *Latimer v. State*, 319 S.W.3d 128, 133, (Tex.App.-Waco 2010, no pet.).

The State filed a notice of expert witnesses that provided "Genevieve Medina, DPS Crime Laboratory, Garland, TX. Forensic Science. Sample of [Sanchez's] blood submitted in connection with this case contained 0.31 grams of alcohol per 100 ml of blood." Medina was examined at a pretrial hearing. During that hearing, Sanchez's counsel questioned Medina on the lapse in time between the offense and the blood draw.

During trial, Medina testified that Sanchez's blood sample contained 0.31 grams of alcohol per 100 milliliters of blood. The State asked Medina if she had learned about the effects of alcohol on the human body during her course of training. Sanchez objected to the line of questioning because the notice of expert witness did not indicate Medina would testify about the effects of alcohol. The trial court allowed the testimony "narrowly." Medina then testified that there isn't an "average absorption rate" but that "it generally takes the body about 90 minutes to absorb the alcohol that has been consumed." Medina further testified that the body eliminates alcohol at .01 to .02 grams of alcohol per hour. Medina stated that given Sanchez's high rate of alcohol

concentration at the time the blood was drawn, "it's highly unlikely to have been below the legal limit two hours prior."

Sanchez specifically complains that Medina's notice was outside the State's notice of experts and that the lack of proper notice denied him the constitutional right to confrontation. The State's notice informs Sanchez that Medina will discuss the blood alcohol concentration. During the pretrial hearing, Sanchez's counsel questioned Medina on the lapse of time between the blood draw and the time of the offense. During trial, Sanchez's counsel questioned Medina on cross-examination about the many factors involved in absorption rates and elimination rates. Medina agreed that she could not inform the jury of the absorption rate or elimination rate of Sanchez and that she could only testify with certainty the blood alcohol concentration on the sample she tested. We find that Medina's testimony was not outside the notice provided by the State, and the trial court did not abuse its discretion in allowing Medina's testimony.

Moreover, Sanchez has not shown any harm from the lack of notice as he was prepared to question Medina on cross-examination. TEX.R.APP.P. 44.2 (b). Additionally, there was other evidence of Sanchez's intoxication at the time of the offense. There was testimony that he had been drinking before the offense. Sanchez's brother-in-law testified that there were beer bottles around Sanchez's bed and that he was unable to awaken him. There was testimony that Sanchez was disoriented and confused at the scene of the offense. Deputy Atilano testified that Sanchez had slurred speech, smelled of alcohol, and that he could not perform the field sobriety tests. We overrule the first issue.

**Motion to Suppress**

In the third issue, Sanchez argues that the trial court erred in denying his motion to suppress. In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). Because the trial court is the exclusive fact finder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman v. State*, supra. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Guzman v. State*, supra; *Davila v. State*, 4 S.W.3d 844, 847-48 (Tex.App.-Eastland 1999, no pet'n). We review questions involving legal principles and the application of law to established facts de novo. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App 2004).

Sanchez argues that he was "in custody immediately at the scene first by the Houks and Worley then by the paramedics." He contends that statements he made should be suppressed. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that the State may not use any statements stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v Arizona*, 384 U.S. at 444. The Court specifically defined "custodial

interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v Arizona*, 384 U.S. at 444; *Wilkerson v. State*, 173 S.W.3d 521, (Tex. Crim. App. 2005). The *Miranda* rule is intended to guard "against coercive custodial questioning by police; it protects a suspect from the possibility of physical or psychological 'third degree' procedures." *Wilkerson v. State*, 173 S.W.3d at 527. *Miranda* does not apply to all custodial questioning. *Wilkerson v. State*, 173 S.W.3d at 528. It generally applies only to questioning by law enforcement officers or their agents. *Id*.

Sanchez was on the private property of the Houks. They were concerned for his medical safety and called 9-1-1. Sanchez was not "in custody" of the Houks or Worley. The paramedics arrived at the scene and questioned Sanchez to assess his medical condition. The statements Sanchez made to the paramedics were not the result of custodial interrogation. The trial court did not err in denying his motion to suppress. We overrule the third issue.

## Conclusion

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed
Opinion delivered and filed October 3, 2013
Do not publish
[CR 25]