

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00170-CR

**KELLY LEE DICKEY,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 220th District Court
Bosque County, Texas
Trial Court No. CR14750**

## MEMORANDUM  OPINION

The jury convicted Kelly Lee Dickey of the offense of aggravated sexual assault

and assessed punishment at 50 years confinement and a $10,000 fine.  We affirm.

### Background Facts

Kelly Dickey and Sheila Pennell met through a Narcotics Anonymous therapy

group.  They agreed to have sexual relations to conceive a child.  Pursuant to their

agreement, Shelia would take ovulation tests, and they would have sex when she was

ovulating.  On October 15, 2011, Sheila was not feeling well.  Kelly went to her house to

cook for her and to care for her, and he stayed the night with Sheila. Kelly and Sheila spent the day together on October 16, and they were both drinking alcoholic beverages throughout the day. At some point that evening, Kelly and Sheila got into an argument. Kelly left Sheila's house, but later returned. Kelly and Sheila gave different accounts of the events that occurred that night.

Sheila testified that Kelly wanted to have sex, but that she did not. Sheila took an ovulation test and determined that she was not ovulating. Kelly became very angry and started an argument with her. Shelia stated that Kelly left the house at that time, but later returned after apologizing. Sheila testified that after Kelly returned, he again wanted to have sex. Kelly became very angry when Sheila would not agree to have sex. He started grabbing at her, but she was able to get away from him. Sheila asked Kelly to leave, and he began gathering his things. Sheila thought Kelly was leaving, but Kelly grabbed her and slammed her head into a bar area and began beating her with his casted arm. Sheila said that Kelly was choking her and that he was hitting her and kicking her. Sheila testified that she was in and out of consciousness and that Kelly was hitting her every time she would regain consciousness. Sheila is unaware what all occurred while she was unconscious.

When she finally regained consciousness, Sheila testified that she was naked and lying in blood and feces. Sheila further testified that she had considerable pain in her genital area and that she was bleeding from her genital and anal areas. She was able to make it to her neighbor's house, and her neighbor called 9-1-1.

Kelly testified that he decided to leave Sheila's house around 8:00 p.m., but that she called him numerous times begging him to come back. Kelly decided to go back, and when he returned he says Sheila wanted to have sex with him and that she told him to get naked. Kelly said that around 10:00 p.m. Sheila became very sleepy, and he took her to bed. After Kelly tucked her into bed, Sheila fell out of the bed. Kelly put her back into bed, and she fell out again. Kelly then put her in the center of the bed, and he got into bed with her. Kelly said that they were both naked. Kelly went to sleep, but at some point Sheila became agitated and was pacing by the bed. Shelia then struck Kelly almost knocking him out of the bed.

Kelly stated that Sheila started kissing him, but then bit down on his tongue. Kelly admits to hitting Sheila with an open hand to get her to release his tongue. After he got away from her, Kelly started getting his clothes on to leave. Kelly said that Sheila then came after him again and scratched him. He wrapped his arms around her to stop her, and she head-butted him several times. Kelly shoved her down and tried to leave. As he was trying to get out of the house Sheila came running out of the bedroom. Kelly testified that she ran into the kitchen table and that "she -hits on the floor, just a little turd about this big." Kelly said Sheila looked "insane" like she wanted to "kill" him. Kelly denied sexually assaulting Sheila. He said that Sheila's injuries came from her head-butting him and attacking him. Kelly further testified that he suffered injuries defending himself from Sheila.

The medical testimony showed that Sheila had severe facial bruising. Her eye was swollen shut, and she had a cut requiring stitches above her eye. Sheila also had an

abrasion on her neck consistent with being choked. Debbie McElveen, the sexual assault nurse examiner who examined Sheila, testified that Sheila had scratches and bruises from head to toe. Sheila had abrasions on her genital area consistent with being penetrated and also had a tear to her vaginal area. McElveen stated that the injuries were consistent with being penetrated with a bottle or other object.

## Expert Testimony

In the first issue, Kelly argues that the trial court erred in prohibiting Francene Tovar-Peters from testifying as an expert. We review the admission of expert testimony for an abuse of discretion. *Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992); *Latimer v. State*, 319 S.W.3d 128, 133 (Tex. App.—Waco 2010, no pet.). Rule 702 of the Texas Rules of Evidence governs the admission of expert testimony. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

TEX. R. EVID. 702.

Thus, before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his or her knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006) (citing *Alvarado v. State*, 912 S.W.2d 199, 215-16 (Tex. Crim. App. 1995)); *Latimer v. State*, 319 S.W.3d at 133.

Kelly sought to have Tovar-Peters testify concerning Sheila's psychiatric condition. The State objected to the testimony and was allowed to take Tovar-Peters on voir dire out of the presence of the jury. Tovar-Peters would have testified that Sheila was substance dependent, suffered from major depression, had generalized anxiety disorder, and a personality disorder. She explained that persons with personality disorder are dramatic, impulsive, and seek attention.

At the hearing outside the presence of the jury, the trial court asked Kelly to show how the evidence was relevant to the proceedings. Kelly's attorney argued that the evidence was relevant to show Sheila's "mental state of mind" and to show her truthfulness. The trial court found that the communications Sheila made to Tovar-Peters during treatment were privileged, that specific instances of Sheila's conduct would not be admissible, and that Sheila's psychiatric condition was not relevant to the proceedings.

Expert witness testimony should only be admitted when it is helpful to the jury and limited to situations in which the expert's knowledge and experience on a relevant issue are beyond that of an average juror. *See McGann v. State*, 30 S.W.3d 540, 545 (Tex.App.-Fort Worth 2000, pet. ref'd). Expert testimony on the truthfulness of a witness is inadmissible under Rule 702. *See Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993). Testimony on the witness's truthfulness usurps the jury's function to judge the credibility of witnesses. *See Yount v. State*, 872 S.W.2d at 708. Instead of experts, it is jurors who must draw "conclusions concerning the credibility of the parties in issue." *See Yount v. State*, 872 S.W.2d at 710.

Rule of Evidence 608(a) allows the credibility of a witness to be attacked or supported by evidence in the form of opinion or reputation. TEX.R.EVID. 608 (a). The evidence may only refer to character for truthfulness or untruthfulness. TEX.R.EVID. 608 (a) (1). Specific instances of the conduct of a witness are generally not admissible. *See* TEX.R.EVID. 608 (b).

The trial court did not abuse its discretion in excluding the testimony of Tovar-Peters. Tovar-Peters could not testify as an expert on Sheila's truthfulness, and her testimony was not opinion or reputation evidence concerning Sheila's truthful character, but rather it was an opinion about her truthfulness as to these specific allegations. We overrule the first issue.

## Deadly Weapon Finding

In the second issue, Kelly argues that the evidence is insufficient to support a deadly weapon finding. The State alleged that Kelly penetrated the sexual organ of Sheila without her consent and that he used his hands as a deadly weapon in the course of the same criminal episode.

The standard enunciated in *Jackson v. Virginia* is the only standard a reviewing court applies in determining whether evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert den'd*, 132 S.Ct. 2712, 183 L.Ed.2d 71 (2012).

As applied to this case, a person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without the person's consent, and uses or exhibits a deadly weapon in the course of the same criminal episode. TEX. PENAL CODE ANN. 22.021 (a) (1) (A) (1) & (a) (2) (A) (iv) (West Supp. 2013). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2013). This definition does not require the State to prove that anyone actually died or suffered serious bodily injury or that the accused intended to cause serious bodily injury. *Jackson v. State*, 399 S.W.3d 285, 293 (Tex. App.—Waco 2013, no pet.). Rather, it need only prove that the weapon in question was capable of causing serious bodily injury in the way it was used or intended to be used. *Id.*

A hand may be a deadly weapon within the meaning of § 1.07(a)(17) "depending upon the evidence shown." *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004). The injuries inflicted on the victim are factors to be considered in determining whether a hand was used as a deadly weapon. *Id*. Sheila testified that Kelly punched her and hit her in the head with his hands. The record shows that Kelly had a cast on his arm, and Sheila stated that Kelly hit her repeatedly with the casted hand. Sheila was knocked unconscious by the blows to her head. The medical testimony also shows that Sheila had injuries on her neck consistent with being choked by Kelly's casted hand. Sheila stated that she had concussion issues and memory loss from the assault. Sheila's injuries were documented by photographs that were shown to the jury during trial.

We find that the evidence was sufficient to support the jury's finding that Kelly's hands, in the manner they were used, were capable of causing death or serious bodily injury. We overrule the second issue.

## Jury Instruction

In the third issue, Kelly argues that the trial court erred in failing to include the definitions of "serious bodily injury" and "jail house informant" in the jury instructions. Appellate review of alleged jury-charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, the court must determine whether error actually exists in the charge. If error is found, the court must then evaluate whether sufficient harm resulted from the error to require reversal. *Id*. at 731-32. If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

The charge correctly defined deadly weapon as "anything that the defendant intended to use in a manner that if so used would make it capable of causing death or serious bodily injury." The charge did not go on to define serious bodily injury. Kelly did not object to the omission of the definition of serious bodily injury.

The State was not required to prove that Sheila suffered serious bodily injury, and that term does not appear in the indictment. *See Remsburg v. State*, 219 S.W.3d 541, 547-8 (Tex. App.—Texarkana 2007, pet. ref'd). That definition would be relevant only to further explain the definition given by the trial court for the term "deadly weapon." *Id.* Moreover, because Kelly did not object to the omission of the definition, to obtain a reversal of the judgment, any error in failing to include the definition must result in egregious harm. Kelly does not show what evidence in the record demonstrates actual harm as a result of the trial court failing to define a term that does not appear in the indictment. *Id.* The record does not show that Kelly suffered actual harm from the omission of the definition.

Richard Hall testified at trial that he met Kelly while they were both in jail. Hall stated that Kelly offered him money to discredit Sheila's reputation by saying that she

purchased drugs from him. Kelly also told Hall that he would "take care of him" if Sheila did not make it to trial to testify. Kelly testified at trial that Hall's testimony was false.

Kelly did not object to the trial court's omission of a definition of jail house informant. He argues on appeal that the trial court should have included a definition that:

> A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest during a time when the person was imprisoned or confined in the same correctional facility as the defendant unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

*See* TEX. CODE CRIM. PRO. ANN. art. 38.075 (a) (West Supp. 2013). Kelly further wanted the trial court to instruct the jury that they could not convict Kelly upon Hall's testimony unless they believed that his testimony is true and shows the guilt of Kelly as charged in the indictment. Kelly also wanted an instruction that they cannot convict based upon Hall's testimony unless it is corroborated by other evidence tending to connect Kelly with the offense.

Hall did not testify that Kelly committed the aggravated sexual assault, rather Hall testified that Kelly said that Sheila attacked him and that Sheila head-butted him. Moreover, the State did not rely on Hall's testimony to connect Kelly to the offense. Sheila identified Kelly as the person who sexually assaulted her. Kelly has not shown that he suffered actual harm from the omission of the definition. We overrule the third issue.

**Punishment Range**

In the fourth issue, Kelly argues that the trial court improperly instructed the jury on the applicable punishment range. The State gave Kelly notice that the punishment range for the charged offense was enhanced to first degree felony punishment range of 15-99 years or life based upon Kelly's prior felony conviction. *See* TEX. PENAL CODE ANN. § 12.42 (c)(1) (West Supp. 2013). The prior conviction was from Cause No. F-2009-1784-C in the 211th Judicial District Court of Denton County for the third degree felony offense of theft. Kelly pleaded true to the enhancement allegation, and the trial court charged the jury that the applicable punishment range was 15-99 years or life.

Kelly argues that his conviction in Cause No. F-2009-1784-C was actually for a state jail felony that was enhanced to a third degree felony and cannot be used for enhancement purposes. The State concedes that Kelly's prior conviction for a state jail felony conviction could not be used for enhancement purposes. *State v. Webb*, 12 S.W.3d 808 (Tex. Crim. App. 2000). Therefore, the jury should have been instructed that the applicable punishment range was 5-99 years or life. TEX. PENAL CODE ANN. § 12.32 (a) (West Supp. 2013).

In *Uribe v. State*, the Court held that "[T]he submission to the jury of a penalty range more severe than that authorized by law deprived appellants of a fair and impartial trial, even though the jury assessed punishment within the lawful range." *Uribe v. State*, 688 S.W.2d 534, 539 (Tex. Crim. App. 1985). In *Almanza*, the Court held that unobjected to jury charge error requires reversal of a judgment only when it can be

shown that the error caused egregious harm to the defendant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). In *Cartwright v. State*, the Court noted that although *Uribe* was decided subsequent to *Almanza*, the broad holding in *Uribe* did not appear to have taken the holding in *Almanza* into account. *Cartwright v. State*, 833 S.W.2d 134, 136 (Tex. Crim. App. 1992). In *Cartwright*, the Court found that erroneous instructions as to the range of punishment that were not objected to should be analyzed for egregious error. *Id*.

Kelly pleaded true to the enhancement paragraph and did not object to the trial court's charge on the applicable punishment range. The record must show that Kelly suffered egregious harm such that the he did not receive a fair and impartial trial. *Martin v. State*, 200 S.W.3d 635, 639-40 (Tex. Crim. App. 2006) (citing *Almanza*, 686 S.W.2d at 171 (op. on reh'g)). In determining whether egregious harm occurred, we review the error "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record ... as a whole." *Skinner v. State*, 956 S.W.2d 532, 544 (Tex.Crim.App.1997) (quoting *Almanza*, 686 S.W.2d at 171); *Jones v. State*, 300 S.W.3d 93, 100 (Tex.App. – Texarkana 2009, no pet.). Errors resulting in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing *Almanza*, 686 S.W.2d at 171); *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App.1991); *Jones v. State*, 300 S.W.3d at 100.

The jury assessed punishment at 50 years confinement, well above the instructed minimum sentence. The jury heard considerable evidence on Sheila's injuries, and saw numerous pictures depicting her injuries. Given the severity of the sentence assessed in relation to the instructed minimum sentence, the record does not show that Kelly suffered egregious harm. *See Boone v. State*, 2005 WL 598752 (Tex.App.-Texarkana Mar. 16, 2005, pet. ref'd) (mem. op., not designated for publication). We overrule Kelly's fourth issue on appeal.

## Conclusion

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed August 21, 2014
Do not publish
[CR PM]