NO. 12-87-00071-CR

IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS

| | | |
|---|---|---|
| GROVER DANIEL WEST, APPELLANT | § | APPEAL FROM THE 86TH |
| VS. | § | JUDICIAL DISTRICT COURT |
| THE STATE OF TEXAS, APPELLEE | § | OF KAUFMAN COUNTY, TEXAS |

Grover Daniel West was convicted of burglary of a habitation by a jury who assessed his punishment at ninety-nine years and a $9,044 fine.

West presents three points of error contending the trial court erred in overruling his pretrial motion to suppress his written confession, in overruling his motion for instructed verdict, and in conducting a hearing on his motion for new trial in his absence. We affirm the judgment.

It is undisputed that the home of John Allen Manning and his wife, Ralaine Manning, located near Mabank in Kaufman County, was burglarized during the daylight hours of November 12, 1986. The record reveals that the Manning family departed their home at about 7:30 a.m. on that date and returned home in the late afternoon. The Manning's seventeen-year-old daughter, Keefa, was the first to return home. She arrived at about 3:45 p.m. and discovered the burglary. She testified that some of her parent's guns, clothing, and jewelry were missing. John Manning testified that when he arrived home at about 4:00 p.m. he noticed that a window on the west side of the garage had been broken. He testified that various knives, guns, VCR tapes, clothing, and jewelry had been taken in the burglary. At trial he identified a Colt Trooper .357 magnum revolver with a four-inch barrel, introduced into evidence as State's Exhibit No. 1, as one of the weapons stolen by the burglar. Ralaine Manning

catalogued a number of articles stolen from the home, including a GE VCR with remote control, ten VCR tapes, compound hunting bow, thirty-five cassette tapes, and various firearms, including the Colt revolver, a Frencia .22 caliber automatic rifle, a Marlin 30-30 rifle, a Remington bolt action .243 rifle, a Winchester MK II 12 gauge automatic shotgun, an H&R 20 gauge single shotgun, and a Mossberg 22 caliber rifle.

Jessie Van Horn, a Dallas resident and acquaintance of West, testified for the State that West sold him the .357 Colt Revolver shortly before Thanksgiving in 1986.

Neal Morgan, a Kaufman County deputy sheriff, testified without objection that West orally informed him that the Colt revolver could be found at the home of Jessie Van Horn in Dallas, and that he went to Van Horn's home and recovered the pistol.

West gave a written statement on November 28, 1986, confessing to the burglary. Omitting the warnings and formal parts, the confession reads as follows:

> Mr. Morgan is typing this statement as I tell it to him.
>
> On November 12, 1986, Willie Baird and Bobby Linley and I were in Mabank to see my old girlfriend Connie Hartline. About 9:30 a.m. we went to a brick house down the road from my girlfriend's house going toward Kaufman and away from Mabank. I went through the window on the west side of the garage and took a Remington Bolt action .243 rifle with a scope, Colt .357 magnum pistol, Marlin 30-30 rifle, with scope, Frencia .22 rifle, Winchester MK II 12 gauge shotgun, H&R 20 gauge shotgun, Mossburg [sic] 22 caliber rifle, 2 boxes of 22 long rifle shells, 2 boxes of 20 gauge shells, 7 boxes of 12 gauge shells, 1 box of 30-30 shells, Compound bow with quiver of arrows, VCR, Camera equipment, 30 cassette tapes, and some jewelry.

West alleges in his third point of error that his written confession taken by Deputy Sheriff Neal Morgan was involuntary because it was "induced by [promises] of a benefit to [him]." West argues that on the day he gave his confession, Kaufman County Sheriff Robert Harris, told him, in effect, that if

2

he would confess to the burglary, he would not be prosecuted for the offense, and the only consequence thereof would be that his parole[1] would be revoked.

At the suppression hearing West testified that during the evening of November 27, 1986, he was brought to the Kaufman County Sheriff's Office. West stated that Sheriff Robert Harris and Deputy Neal Morgan were present, and that Sheriff Harris asked him "if I was going to clean my business up." He replied, "I told him, I ask him what was he going to give me." West then related that Harris asked him if he "was on parole" and stated that he told the sheriff he was on parole for five years. West then testified that Sheriff Harris told him "that he could see to it that I wouldn't get no more than my parole revocation. If I would clean up my business." West then stated that he asked the sheriff, "How do I know you're not going back on your deal." To which question, according to West's testimony, the sheriff remarked, "That he was the sheriff, and that most of the time what he said went."

West also testified that both Sheriff Harris and Deputy Neal Morgan were present at the county sheriff's office when this conversation took place. Harris denied that he was present either before, during, or after the statement was signed at 2:35 a.m. on November 28, 1987.

Mesquite Police Officer Donny E. James[2] testified that while West was in the custody of the Mesquite Police Department in the "early morning hours of November 28," that West told him, in the presence of Morgan, "that they had agreed to try to get his sentence concurrent with his parole revocation." (Emphasis ours.) James testified that Morgan was "standing there. I don't

---

[1]West was on parole at the time from the Texas Department of Corrections.

[2]Produced as a witness by West.

recall him saying anything in particular." James, when asked, "[w]as he [Morgan] close enough to hear the statement that [West] . . . made?," replied, "Yes, ma'am." On cross-examination by the State, James testified, in effect, that he never heard "any law enforcement official . . . offer [West] . . . any reward, promise, probation, parole, in order to obtain a statement from him." On redirect examination, James stated that "in [his] presence Mr. West made the statement that he had made a deal with Kaufman County that <u>he was only going to get his parole revoked</u>." (Emphasis ours.) James also testified that the foregoing statement by West was made in the presence of Morgan.

Sheriff Harris, testifying for the State, denied that he ever made any promise of any benefits to West, and specifically denied on cross-examination that he told West "if he cleared up some burglaries or if he cleared up his business that [he] would see that [West] would only get his parole revoked."

Following the suppression hearing, the trial court signed an order finding beyond a reasonable doubt that the confession was voluntarily made by West and thus admissible in evidence. In addition, the court found that no promises had been made to induce the confession.

The evidence before the trial judge was conflicting respecting the voluntariness issue and in other respects, but the trial judge, as the sole trier of the facts and judge of the credibility of the witnesses, concluded that West's confession was not the product of any improper promise of favorable treatment. We find that the evidence before the judge supports his ruling. The point is overruled.

West by his second point claims that the evidence is insufficient to support his conviction. West specifically asserts "that the evidence was insufficient <u>to connect [West] with the [burglary]</u>." (Emphasis ours.)

4

It is true, as West argues, that the only property placed in West's possession[3] following the burglary was the .357 magnum Colt Trooper revolver recovered by Deputy Neal Morgan from Van Horn. John Manning did identify the weapon as the one taken in the burglary; however, his identification thereof was not positive. When asked on cross-examination whether he was "absolutely sure" that the pistol recovered from Van Horn and introduced into evidence was his pistol, he replied, "[w]ell, I'm almost sure, yes." Standing alone, the testimonies of Van Horn, John and Ralaine Manning, and Neal Morgan regarding the pistol are insufficient to prove beyond a reasonable doubt that West burglarized Manning's home on December 12, 1986. Furthermore, we agree that while West's confession, standing alone, likewise would not constitute sufficient evidence to establish West's guilt beyond a reasonable doubt, when all of the evidence is considered in a light most favorable to the prosecution, we do conclude that reasonable jurors could have found each essential element of the burglary to be established beyond a reasonable doubt. Although the confession does not identify the burglarized house as belonging to Manning, it does contain admissions of West that he entered a home near Mabank on November 12, 1986, through a "window on the west side of the garage" and stole firearms, including a Colt revolver which was taken in the burglary according to the testimony of John and Ralaine Manning.

Our analysis of the evidence leads us to conclude that no other reasonable hypothesis arises out of that evidence other than the guilt of West. Point two is likewise overruled.

---

[3]Other than by West's confession.

We turn finally to West's first point of error by which he claims his rights under the Sixth and Fourteenth Amendments and Tex. Const. art. I, § 10, and Tex. Code Crim. Proc. Ann. art. 33.03 (Vernon Supp. 1987)[4] were violated when the trial court conducted a hearing on his motion for new trial in his absence.

We first address West's contention that his conviction must be reversed because his motion for new trial was heard, considered and overruled in his absence in violation of article 33.03.

The record affirmatively shows that West was incarcerated in the Department of Corrections when the motion was filed, heard, and overruled by the trial judge. It is undisputed that West's counsel filed a sworn application for the issuance of bench warrant on April 9, 1987, so that West could be brought to the hearing scheduled to be conducted on his motion on April 13, 1987. The bench warrant was not issued. On April 13, 1987, the court called the motion for hearing and conducted the hearing in the absence of West. His counsel objected to proceeding on the motion for new trial in the absence of West and called the court's attention to her application for bench warrant. The trial court denied the application for bench warrant and instructed counsel to proceed. Counsel then argued the motion which was promptly overruled.

The sole ground alleged in the motion for new trial was that the evidence was insufficient to support the jury's verdict. Therefore, the only evidence relevant for consideration by the trial court in determining that motion was the evidence introduced at trial.

_____

[4]Hereinafter referred to as article 33.03.

Article 33.03 reads in pertinent part: "In all prosecutions for felonies, the defendant must be personally present at the trial . . . ." Article 33.03 and its precursors[5] have been examined in a number of cases by the 1887 Court of Appeals and the Court of Criminal Appeals, including Powers v. State, 23 Tex. Cr. R. 42, 5 S.W. 153 (1887); Cartwright v. State, 97 Tex. Cr. R. 230, 259 S.W. 1085 (1924); Henderson v. State, 137 Tex. Cr. R. 18, 127 S.W.2d 902 (1939); Phillips v. State, 163 Tex. Cr. R. 13, 288 S.W.2d 775 (1956); Mares v. State, 571 S.W.2d 303 (Tex. Cr. App. 1978); and Cooper v. State, 631 S.W.2d 508 (Tex. Cr. App. 1982).

In Powers, 5 S.W. 153, a murder case, the facts were that in the defendant's absence a venireman was examined, peremptorily challenged by the State and was excused by the court. In addressing Powers' claim that these facts required reversal of his conviction, Presiding Judge White wrote:

> A selection of the jury is beyond doubt one of the most important features of a trial for a capital felony, and we can well imagine how important it is ordinarily for a defendant to be present during such proceedings. But in any case, when a rule is invoked for non-observance, there should at least appear some slight reason why it should have been observed. It is a maxim that, as a general thing, where the reason of a rule fails, the rule ceases to be obligatory or operative. Now the [juror] . . . had been peremptorily challenged by the state. What possible injury could inure to defendant because the [juror] could not be found and brought back, so that the state might again challenge him in defendant's presence? . . . Under the circumstances disclosed, if error was committed, it was manifestly harmless error, for which no just ground of complaint can lie.

Powers, 5 S.W. at 156.

---

[5]The 1907 version was article 646, and the 1925 version was article 580. Both of these versions contain the identical language quoted above.

In _Cartwright v. State_, 259 S.W. 1085, a significant decision, the record reveals that after the state rested in a bootleg[6] case, the defendant and his counsel retired from the courtroom into an anteroom to discuss the case. The jury was apparently still seated in the jury box. During the defendant's absence, the prosecutor exhibited a "glass jug containing a quantity of the liquor found at [defendant's] still." The jug was earlier introduced into evidence. Whereupon, several jurors smelled the jug. The court, construing former article 646 of "Vernon's Code of Criminal Procedure," concluded that Cartwright sustained "no injury" utilizing the ratio of Judge White in _Powers v. State_, 5 S.W. at 156, quoted above. _Cartwright_, 259 S.W. at 1086.

In _Henderson v. State_, 127 S.W.2d 902, the defendant was absent when his motion for new trial in a misdemeanor case was heard and overruled by the trial court. The court reversed the judgment, concluding that under former article 580[7] "it was error, for the court, in the absence of appellant, to hear, consider and overrule the motion." (Citation omitted.)

The _Henderson_ court pretermitted any discussion of the "harmless error" doctrine espoused in _Cartwright_, but carefully noted that the defendant was charged with misdemeanor theft on December 5, 1938, she was arrested and jailed on the same day, and that on the morning of the following day she was brought before the county court where she pleaded guilty before the judge after waiving a jury trial (presumably without the assistance of counsel). The trial court assessed her punishment at a fine and imprisonment in the county

---

[6]Illegal manufacture of whiskey.

[7]Article 580 read in part: "In all prosecutions for felonies, the defendant must be personally present at trial, and he must likewise be present in all cases of misdemeanor when the punishment or any part thereof is imprisonment in jail . . . ." (Emphasis ours.)

8

jail for sixty days. The record shows that following her conviction she employed counsel who filed a motion for new trial, alleging that the guilty plea was coerced by the sheriff. Our reading of Henderson is that the harm to Henderson was obvious. She was prevented from presenting her testimony in support of her allegation that her plea of guilty was coerced.

In Phillips v. State, 288 S.W.2d 775, the court in a brief opinion written by Judge Morrison, reversed the defendant's conviction of assault with attempt to rape, tersely stating that the record shows that the defendant "was not present when his motion for new trial was overruled, that he was in jail, and that he did not waive his right [under article 580] to be present." An insight into the significance of Phillips is gained by noting that the court cites Henderson v. State, 127 S.W.2d 902, and as has already been observed in Henderson, the harm or injury to the defendant there was clearly demonstrated by the record. In our view, Phillips and Henderson are "two peas in a pod."

In any event, the question whether a violation of an accused's right under article 33.03 to be present at trial requires reversal in the absence of a showing of harm or prejudice to the defendant, was settled by the Court of Criminal Appeals by its 1978 decision in Mares v. State, 571 S.W.2d 303. The Mares case, following the lead of Cartwright, held that where a defendant is absent during a trial proceeding, reversal is not required by article 33.03 unless "injury is shown to the defendant or [unless] there are facts [shown by the record] from which injury [to the defendant] can be inferred." (Citation omitted.) Mares was reaffirmed in Cooper v. State,[8] 631 S.W.2d at 511-512.

_____

[8] It is noteworthy that the court in both Mares and Cooper seems to place the burden on the accused to establish prejudice to his cause resulting from his absence in spite of the requirement of article 33.03 that he must be

(Footnote Continued)

We conclude that West sustained no harm or injury by the violation of the statute. No evidence was heard by the court; indeed, no evidence other than that already before the court was admissible under the ground alleged in West's motion.

The court under the circumstances here erred in hearing and overruling West's motion for new trial in his absence, but we hold the error to be harmless beyond a reasonable doubt. We apply that standard because it appears that Tex. R. App. P. 81(b)(2) is inapplicable to a post-trial proceeding, since under that rule of reversible error in criminal cases the presence of an error requires reversal "unless the appellate court determines beyond a reasonable doubt <u>that the error made no contribution to the conviction or to the punishment</u>." (Emphasis ours.) Errors contemplated by Rule 81(b)(2)[9] are errors necessarily committed during the course of the trial itself.

West contends that his rights under the Sixth and Fourteenth Amendments and Tex. Const. art. 1, § 10, were violated by the court's action in hearing and overruling his motion for new trial in his absence.

Under the present circumstances, we hold that West's rights under these state and federal constitutional provisions are not implicated. <u>Mares v. State</u>, 571 S.W.2d 303. However, assuming, without deciding, that the court's action did violate both state and federal constitutional protection afforded West, we conclude that the error was harmless beyond a reasonable doubt. <u>Chapman v. California</u>, 386 U.S. 18 (1967).

---

(Footnote Continued)
personally present. Additionally, both decisions seem to confuse the concept of "harmless error" as applied by <u>Cartwright</u> with no error.

[9]As modified by current Tex. Code Crim. Proc. Ann. art. 44.29, Act of May 26, 1987, ch. 179, § 1, 1987 Tex. Sess. Law Serv. 2711, 2712 (Vernon).

10

West's first point of error is overruled.

The judgment of the trial court is affirmed.

_____
PAUL S. COLLEY
Justice

Opinion delivered November 24, 1987.

(PUBLISH)

11