

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-15-00360-CR**

**JEFFERY MARTINEZ,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 278th District Court**
**Walker County, Texas**
**Trial Court No. 26495**

**MEMORANDUM OPINION**

In eleven issues, appellant, Jeffery Martinez, challenges his conviction for intoxication manslaughter. *See* TEX. PENAL CODE ANN. § 49.08(b) (West 2011). We affirm.

## I.     BACKGROUND

Here, appellant was charged by indictment with intoxication manslaughter for "operat[ing] a motor vehicle in a public place while intoxicated by reason of the introduction of alcohol into the body, and did by reason of such intoxication cause the

death of another, namely Pedro Ramirez-Monsivais . . . ." The record reveals that Jorge Rodriguez-Sepeda also died as a result of the incident, though the indictment did not reference him.

At the conclusion of trial, the jury found appellant guilty of the charged offense and sentenced him to ten years and six months' incarceration in the Institutional Division of the Texas Department of Criminal Justice with a $7,500 fine. Appellant subsequently filed motions for new trial and in arrest of judgment. Both motions were denied by the trial court. The trial court certified appellant's right of appeal, and this appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

In his first and second issues, appellant contends that the evidence is legally and factually insufficient to support his conviction. Specifically, appellant complains that the evidence did not prove beyond a reasonable doubt that he was the driver of the vehicle that caused the deaths of two others.

At the outset, we note that the Court of Criminal Appeals, in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010), abandoned the factual-sufficiency standard in criminal cases, instructing that we need only consider the sufficiency of the evidence under the legal-sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). As such, we analyze appellant's first two issues under the *Jackson v. Virginia* legal-sufficiency standard of review. *See Brooks*, 323 S.W.3d at 902 (concluding that there is "no meaningful distinction between the *Jackson v. Virginia*

legally sufficiency standard and the . . . factual sufficiency standard, and these two standards have become indistinguishable.").

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder

is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

"A person commits [intoxication manslaughter] if the person . . . (1) operates a motor vehicle in a public place . . . ; and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake." TEX. PENAL CODE ANN. § 49.08; *see Mitchell v. State*, 419 S.W.3d 655, 663 (Tex. App.—San Antonio 2013, pet. ref'd). At trial and on appeal, appellant only challenges the first element—whether he was the person operating the motor vehicle at the time of the crash.

Texas Department of Public Safety Trooper Michael Alders testified that he was dispatched to a crash on Interstate 45 on April 3, 2012, at approximately 1:03 a.m. Upon arriving, Trooper Alders discovered that two people had died as a result of the crash. Trooper Alders also observed appellant and another person injured in a different vehicle.

Trooper Alders testified that: "After talking to EMS personnel and people on the scene, it was determined that they believed that due to the injuries and obviously the impact of the Jeep, that Martinez [appellant] was the driver." Trooper Alders later clarified that appellant "had broken—lower extremity injuries, possible broken foot" and that this was important "[b]ecause there was a heavy impact on the driver's side—to the driver's side from the head-on collision. The driver's side, the floor was crushed all the way up to the seat. Whoever was sitting there was going to have lower extremity injuries."

Steve Jeter, a sergeant with the Texas Rangers, concurred with Trooper Alders's conclusion that appellant was the driver of the vehicle. Ranger Jeter agreed that appellant's injuries to his lower extremities demonstrated that he was the driver of the vehicle. Ranger Jeter also noted that what appeared to be appellant's shoe was found pinned in the floorboard on the driver's side of the vehicle. Kristi Wimsatt, the DNA section supervisor at the Texas Department of Public Safety crime lab, testified that she compared the known DNA profile of appellant with the DNA profiles found on the shoe recovered by Ranger Jeter and the driver's-side airbag. Wimsatt confirmed that appellant was the source of the mixture DNA found on the shoe and that appellant was the single-source contributor of DNA found on the driver's-side airbag.

Despite the aforementioned evidence, appellant argues on appeal that, among other things, no witness placed him as the driver of the vehicle; the first person on the scene, Walker County EMS Field Supervisor Dean Cashburn, noticed that appellant "was

sitting with his torso and head through the front two seats and then towards the passenger seat"; appellant was removed from the passenger side of the vehicle "for convenience" by the Jaws of Life; "[a]ppellant's injuries appeared to be passenger seatbelt marks"; and appellant's "full DNA profile" was apparently found on the "passenger seatbelt." However, as noted earlier, it is within the province of the jury to resolve conflicts in the evidence, and we are to defer to the jury's resolution of those conflicts. *See Chambers*, 805 S.W.2d at 461; *see also Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge."). In convicting appellant of the charged offense, the jury clearly believed the testimony of the State's witnesses and the DNA evidence found on the shoe recovered from the floorboard of the driver's side of the vehicle and the driver's-side airbag that linked appellant as the driver of the vehicle; and as such, we must defer to the jury's resolution of the conflict in the evidence. *See Chambers*, 805 S.W.2d at 461; *see also Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *Lancon*, 253 S.W.3d at 706; *Render*, 316 S.W.3d at 859.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have concluded that the State proved beyond a reasonable

doubt that appellant committed the offense of intoxication manslaughter. *See* TEX. PENAL CODE ANN. § 49.08(b); *see also Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. We therefore hold that the evidence is sufficient to support appellant's conviction. *See* TEX. PENAL CODE ANN. § 49.08(b); *see also Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. Accordingly, we overrule appellant's first two issues.

### III. APPELLANT'S EXPERT WITNESS

In his third issue, appellant complains that the trial court abused its discretion in refusing to allow his expert witness, Richard Baratta, Ph.D., to testify before the jury about one of the two opinions he formed.

We review the admission or exclusion of expert testimony for an abuse of discretion. *See Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992); *see also Latimer v. State*, 319 S.W.3d 128, 133 (Tex. App.—Waco 2010, no pet.). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *See Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); *see also Garcia v. State*, Nos. 10-11-00266-CR & 10-11-00267-CR, 2012 Tex. App. LEXIS 9880, at *11 (Tex. App.—Waco Nov. 15, 2012, pet. ref'd) (mem. op., not designated for publication).

In a *Daubert* hearing outside the presence of the jury, defense counsel and prosecutors questioned Dr. Baratta about his background and his opinions regarding the fatal accident. Dr. Baratta indicated that he had two opinions: (1) "that there's not sufficient data to conclusively pinpoint who was the driver of the vehicle"; and (2) "that

considering all of the data that is there, I think it's more likely that Mr. Martinez was the passenger, not the driver of the vehicle." Dr. Baratta then explained that his opinions were based on "accident reconstruction and with occupant kinematics; most specifically with occupant kinematics and injuries that come from those kinematics." Dr. Baratta relied on photographs and medical reports documenting the injuries to the passengers of the vehicle. Dr. Baratta denied personally inspecting the vehicle, taking measurements of the roadway at the scene of the incident, or interviewing anyone.

Despite the foregoing, the trial court noted the following during the questioning of Dr. Baratta:

> I'm concerned about, not what you've done in the past. I'm concerned—the whole threshold question in the *Daubert Kelly* hearing is the reliability of the—
>
> . . .
>
> of the science and the basis, so you need to get focused on the reliability, because I don't care that he didn't go out there and measure the skid marks. Nobody did, that I know of. I mean, we haven't heard it, if there are, and so I don't have any problem with him using photographs and stuff like that, but there is just a wealth of stuff here that was available that wasn't looked at, which to me, personally, affects the reliability, so if you're going to want to use him, you need to focus on the reliability of his science as it applies to this case, not what he's done elsewhere. . . .
>
> I think there's plenty of things here that he didn't bother to look at –
>
> . . . .

At the conclusion of the *Daubert* hearing, the trial judge allowed Dr. Baratta to testify to his first opinion—his belief that there was insufficient information available to

determine which of the two occupants was operating the vehicle at the time of the crash. The second opinion—that it was more likely that the other occupant of the vehicle was the driver—was excluded by the trial court.

Based on our review of the record, we cannot say that it is outside the zone of reasonable disagreement that the trial court allowed Dr. Baratta to testify as to his first opinion, but excluded his second opinion that was directly contrary to his first opinion. *See Bekendam v. State*, 441 S.W.3d 295, 303 (Tex. Crim. App. 2014) ("Prior to admitting expert testimony, Rule of Evidence 705(c) requires the trial court to first determine whether the basis for the expert's testimony is reliable, and if the court determines that the underlying facts or data do not provide a sufficient basis for the expert's opinion under Rule 702 or 703, the opinion is inadmissible." (internal citations & quotations omitted)); *Leonard v. State*, 385 S.W.3d 570, 582 (Tex. Crim. App. 2012); *Layton*, 280 S.W.3d at 240; *see also Garcia*, 2012 Tex. App. LEXIS 9880, at *11. Accordingly, we cannot say that the trial court abused its discretion in excluding Dr. Baratta's second opinion. *See Joiner*, 825 S.W.2d at 708; *see also Latimer*, 319 S.W.3d at 133. We overrule appellant's third issue.

## IV. EVIDENCE FROM A WARRANTLESS BLOOD DRAW

In his fourth issue, appellant argues that the trial court committed error by admitting the results of a warrantless blood draw over his objection.

At the suppression hearing that was held outside the presence of the jury, appellant limited his objection to the warrantless-blood-draw evidence to the fact that the

blood draw was done "without a warrant" and that it was not "a true exception." The State elicited the testimony of Trooper Alders to establish probable cause that appellant was the intoxicated driver of the motor vehicle that resulted in the fatal accident. On cross-examination, appellant focused his entire line of questioning on attacking Trooper Alders's belief that appellant was the driver of the vehicle. Appellant did not question Trooper Alders regarding exigent circumstances or any efforts that the trooper might have taken to obtain a search warrant. Moreover, at the suppression hearing, appellant did not invoke *Missouri v. McNeely*, nor did he object on the grounds that exigent circumstances did not exist. However, on appeal, appellant references *McNeely* in making his argument that exigent circumstances did not exist in this situation and that a warrant was required for the blood draw.

To preserve an issue for appeal, a timely objection must be made that states the specific ground for objection, if the specific ground is not apparent from the context. *See* TEX. R. APP. P. 33.1(a); *see also Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). Texas Rule of Appellate Procedure 33.1(a) provides that, "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion" stating the grounds for the ruling sought "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). A timely, specific objection is necessary to: (1) inform the judge of the basis

of the objection and affords him an opportunity to rule on it; and (2) it affords opposing counsel an opportunity to respond to the complaint. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977); *see Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009). "As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

In a similar case, the Court of Criminal Appeals concluded that "appellant's isolated statements globally asserting that a blood draw was conducted without a warrant" were not "enough to apprise the trial court that it must consider whether there were exigent circumstances to permit the warrantless search." *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). Like *Douds*, appellant only made global objections to the warrantless blood draw at the suppression hearing. *See id.* Appellant failed to timely and specifically object on the grounds that *McNeely* applied and that exigent circumstances did not exist in this situation. *See* TEX. R. APP. P. 33.1(a)(1)(A); *see also Buchanan*, 207 S.W.3d at 775. Accordingly, we conclude that appellant failed to preserve for review his appellate complaints in this issue. *See* TEX. R. APP. P. 33.1(a)(1)(A); *see also Buchanan*, 207 S.W.3d at 775; *Lankston*, 827 S.W.2d at 909. We overrule appellant's fourth issue.

## V.   Appellant's Motion for Mistrial

In his fifth issue, appellant alleges that the trial court erred by not granting a mistrial due to a claimed violation of Texas Rule of Evidence 614. *See* TEX. R. EVID. 614.

We review the denial of a motion for mistrial under an abuse-of-discretion standard. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Under this standard, we uphold the trial court's ruling as long as the ruling is within the zone of reasonable disagreement. *Id.* "'A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). It is appropriate only for "a narrow class of highly prejudicial and incurable errors." *Id.*; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Therefore, a trial court properly exercises its discretion to declare a mistrial when, due to the error, "an impartial verdict cannot be reached" or a conviction would have to be reversed on appeal due to "an obvious procedural error." *Wood*, 18 S.W.3d at 648; *see Ladd*, 3 S.W.3d at 567.

Texas Rule of Evidence 614, otherwise referred to as "the Rule," provides for the exclusion of witnesses from the courtroom during trial. TEX. R. EVID. 614. The purpose of Rule 614 is to prevent the testimony of one witness from influencing the testimony of another. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). Once Rule 614 is invoked, witnesses are instructed by the trial court that they cannot converse with one

another or with any other person about the case, except by permission from the court, and the trial court must exclude witnesses from the courtroom during the testimony of other witnesses. TEX. R. EVID. 614; *see* TEX. CODE CRIM. PROC. ANN. art. 36.06 (West 2007). If a witness violates Rule 614, the trial court still has discretion to allow the testimony from the witness. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). In reviewing the trial court's decision to allow testimony, we determine whether the appellant was harmed or prejudiced by the witness's violation. *Id.* Harm is established by showing: (1) that the witness actually conferred with or heard testimony of other witnesses; and (2) that the witness's testimony contradicted the testimony of a witness from the opposing side or corroborated testimony of a witness he or she had conferred with or heard. *Id.*

Shortly after the trial court recessed for lunch, appellant claimed that he and other members of his defense team observed Ranger Jeter and two out-of-town witnesses from the Texas Department of Public Safety Crime Lab, Adam Vinson and Kristi Wimsatt, talking in an enclosed law library outside the courtroom. Though appellant conceded that the witnesses were behind closed doors and that he did not know the content of the conversation, appellant moved for the trial court to sanction Ranger Jeter and exclude his upcoming testimony based "on the appearance itself" of some impropriety.

The trial judge called Ranger Jeter into the courtroom and inquired about the conversation. Ranger Jeter admitted to talking with the two witnesses, but explained that they were talking about a place to eat. Ranger Jeter denied talking to the witnesses about

their testimony or any matter pertaining to this case. Apparently satisfied with Ranger Jeter's explanation, the trial court denied appellant's request.

Based on our review of the record, we cannot say that the trial court abused its discretion in denying appellant's motion for mistrial. There is no evidence that Ranger Jeter was present in the courtroom during the testimony of Wimsatt and Vinson. Furthermore, the record does not show that Ranger Jeter, Vinson, and Wimsatt violated the Rule by discussing items pertinent to the case. The only evidence in the record of their conversation is that they "talked about a place to eat." Therefore, we cannot say that appellant has demonstrated a Rule 614 violation. *See* TEX. R. EVID. 614; *see also Russell*, 155 S.W.3d at 179. Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's motion for mistrial. *See Archie*, 221 S.W.3d at 699. We overrule appellant's fifth issue.

## VI. *BRADY* EVIDENCE

In his sixth and seventh issues, appellant contends that the State failed to present admissible *Brady* material prior to trial and that the State's witness testified about the video in violation of *Brady* and a discovery order. Specifically, appellant asserts that Trooper Alders withheld a video recording from his patrol car. The record reflects that prosecutors were not aware of the existence of the video prior to meeting with Trooper Alders. The video was not mentioned in the case file, nor was it mentioned in any police reports. Moreover, prosecutors turned over the video to appellant the morning after they

learned of its existence.  This occurred prior to the case being called on the docket and approximately an hour before jury selection began.

"When *Brady* material is disclosed at trial, the defendant's failure either to object to the admission of the evidence on this basis or to request a continuance waives error 'or at least indicates that the delay in receiving the evidence was not truly prejudicial.'" *Perez v. State*, 414 S.W.3d 784, 790 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (quoting *Apolinar v. State*, 106 S.W.3d 407, 421 (Tex. App.—Houston [1st Dist.] 2003), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005) (holding that the failure to request a continuance waives a complaint that the State withheld exculpatory evidence in violation of *Brady*)); *see Fears v. State*, 479 S.W.3d 315, 327 n.7 (Tex. App.—Corpus Christi 2015, pet. ref'd) ("We hold that appellant has waived error, if any, by failing to request a continuance when the State moved to introduce the recording."); *Smith v. State*, 314 S.W.3d 576, 586 (Tex. App.—Texarkana 2010, no pet.) (holding that a *Brady* challenge was not preserved because the trial court never ruled on the complaint); *Jones v. State*, 234 S.W.3d 151, 158 (Tex. App.—San Antonio 2007, no pet.) (holding that the defendant must request a continuance and present the *Brady* complaint in a motion for new trial to preserve the complaint for appellate review); *Young v. State*, 183 S.W.3d 699, 706 (Tex. App.—Tyler 2005, pet. ref'd) ("The failure to request [a continuance] waives any *Brady* violation, as well as any violation of a discovery order.").

The record shows that appellant did not move for a continuance upon learning of the existence of the video. We therefore conclude that appellant has waived error, if any, by failing to timely object or move for a continuance upon learning of the existence of the video. *See Fears*, 479 S.W.3d at 327 n.7; *Perez*, 414 S.W.3d at 790; *Smith*, 314 S.W.3d at 586; *Jones*, 234 S.W.3d at 158; *Young*, 183 S.W.3d at 706.

And with respect to Trooper Alders's brief testimony about the contents of the video, we note that the comments were made outside the presence of the jury during the hearing on appellant's motion to suppress and that, with the exception of privileges, the Rules of Evidence do not apply to suppression hearings. *See* TEX. R. EVID. 101(e)(1) (providing that the Rules of Evidence do not apply "on a preliminary question of fact governing admissibility"); *Granados v. State*, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002); *see also Bukowski v. State*, No. 10-13-00095-CR, 2014 Tex. App. LEXIS 267, at *31 (Tex. App.—Jan. 9, 2014, no pet.) (mem. op., not designated for publication) ("With the exception of privileges, the Texas Rules of Evidence do not apply to suppression hearings because they involve only the determination of preliminary questions."). As such, Trooper Alders was free to testify about all information he gathered during his investigation, regardless of whether it came from his review of the video. Accordingly, based on the foregoing, we overrule appellant's sixth and seventh issues.

## VII.    INEFFECTIVE ASSISTANCE OF COUNSEL

In his eighth issue, appellant argues that he was denied effective assistance of counsel because his trial counsel, who also happens to be his appellate counsel, failed to move for a continuance after receiving a copy of Trooper Alders's video.

To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must show that counsel was so deficient as to deprive appellant of his Sixth Amendment right to counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Second, appellant must show that the deficient representation was prejudicial and resulted in an unfair trial. *Id.* To satisfy the first prong, appellant must show that his counsel's representation was objectively unreasonable. *Id.*; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). To satisfy the second prong, appellant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812. A reasonable probability exists if it is enough to undermine the adversarial process and thus the outcome of the trial. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001). The appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Thompson*, 9 S.W.3d at 813. Our review is highly deferential and

presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.3d at 813.

The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). "Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination." *Ex parte Welborn*, 875 S.W.2d 391, 393 (Tex. Crim. App. 1990). Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and an allegation of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813.

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Specifically, when the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Therefore, absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged

conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Though the record is silent as to the reasons for most of trial counsel's conduct, we will examine the record to determine if trial counsel's conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

Based on our review of the record, we cannot say that counsel's failure to request a continuance upon learning of the existence of the video is "'so outrageous no competent attorney would have engaged in it.'" *Roberts*, 220 S.W.3d at 533 (quoting *Goodspeed*, 187 S.W.3d at 392). Despite the fact that the record is silent as to counsel's reasons for not moving for a continuance, it is possible that counsel determined that the video was unfavorable to his client. Here, the State indicated that it had no intent to introduce the video into evidence because of the late disclosure. Perhaps counsel was satisfied at the time with the video not being introduced. Without more in the record, we cannot be certain that counsel's actions met the outrageous standard in *Roberts* and *Goodspeed*.

In any event, the record does reveal that counsel filed numerous motions, made a number of objections, and vigorously defended appellant. Additionally, as shown in the analysis of appellant's first two issues, there was sufficient evidence to support appellant's conviction. As such, we cannot say that there is a reasonable probability that, but for counsel's failure to move for a continuance upon learning of the existence of the

video, the outcome of the proceeding would have been different. Accordingly, we conclude that appellant has not satisfied his burden of proving by a preponderance of the evidence that his trial counsel was ineffective. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Thompson*, 9 S.W.3d at 813. We overrule appellant's eighth issue.

## VIII. THE TRIAL COURT'S RESPONSE TO A JURY QUESTION

In his ninth issue, appellant argues that the trial court's response to a jury question during jury deliberations at the sentencing phase of the trial constituted additional law that the jury relied upon and, thus, constituted harmful error.

With regard to responses to jury questions, the Court of Criminal Appeals has noted:

> The jury is bound to be governed by the law it receives from the court. Although the trial court ordinarily provides instructions to the jury in their entirety before the jury retires to deliberate, the court may give further written instructions upon the jury's written request for additional guidance regarding applicable law. When the trial court responds substantively to a question the jury asks during deliberations, that communication essentially amounts to a supplemental jury instruction, and the trial court must follow the same rules for impartiality and neutrality that generally govern jury instructions.
>
> Because a trial court's answer to a jury's question must comply with the same rules that govern charges, the trial court, as a general rule, must limit its answer setting forth the law applicable to the case; it must not express any opinion as to the weight of the evidence, sum up the testimony, discuss the facts, or use any response calculated to arouse the sympathy or excite the passions of the jury.

*Lucio v. State*, 353 S.W.3d 873, 875 (Tex. Crim. App. 2011). The *Lucio* Court ultimately concluded that a trial court's answer to a jury question is not improper if it is a "correct

statement of the law." *Id.* at 877 ("We hold, therefore, that the court of appeals correctly determined that the trial court did not improperly comment on the weight of the evidence in its answer, which provided a correct statement of the law without expressing any opinion as to the weight of the evidence or assuming the existence of a disputed fact.").

In the instant case, during sentencing deliberations, the foreman of the jury sent a note to the trial judge asking, "A jury member would like to know what happens if we are not able to agree on a sentence. Would this result require that a new jury be empaneled?" The trial judge responded with a note stating, "Yes." The statement made by the trial judge is an accurate statement of the law. *See id.*; *see also Arrevalo v. State*, 489 S.W.2d 569, 571 (Tex. Crim. App. 1973) (concluding that the following instruction was not an improper comment on the weight of the evidence: "If this jury after a reasonable length of time finds itself unable to arrive at a unanimous verdict, it will be necessary for the court to declare a mistrial and discharge the jury. The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be empanelled in the same way this jury has been empanelled, and will likely hear the same evidence which has been presented to this jury. . . ."). Additionally, in his appellate brief, appellant does not adequately explain how the statement amounted to harmful error. Accordingly, we overrule appellant's ninth issue.

## IX. APPELLANT'S MOTION FOR NEW TRIAL

In his tenth and eleventh issues, appellant asserts that the trial court committed error in conducting a hearing on his motion for new trial without his presence at the hearing. Appellant also argues that the trial court abused its discretion in denying his motion for new trial on the merits.

We review a trial court's ruling on a motion for new trial under an abuse-of-discretion standard. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). In conducting our review, we view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it is within the zone of reasonable disagreement. *Id.* (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). "We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable." *Id.* "Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling." *Id.* (citing *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)).

A review of appellant's motion for new trial reveals that many of appellant's appellate arguments, which we have rejected, comprise his entire motion. Because we have already rejected all of the arguments that were made in appellant's motion for new trial, we cannot say that the trial court abused its discretion. *See Webb*, 232 S.W.3d at 112; *see also Charles*, 146 S.W.3d at 208; *Wead*, 129 S.W.3d at 129.

However, despite the foregoing, appellant also contends that the trial court abused its discretion by conducting a hearing on his motion for new trial without his presence. Article 33.03 of the Code of Criminal Procedure provides that a defendant is entitled to be present for a hearing on a motion for new trial in a felony case, if he desires. *See* TEX. CODE CRIM. PROC. ANN. art. 33.03 (West 2006). In assessing harm based on a violation of article 33.03, we must determine whether the defendant's "substantial rights" were affected. TEX. R. APP. P. 44.2(b); *see Tracy v. State*, 14 S.W.3d 820, 827 (Tex. App.—Dallas 2000, pet. ref'd) (applying harm analysis under rule 44.2(b) to a violation of article 33.03). The Court of Criminal Appeals has directed, when assessing harm based on a violation of article 33.03, that "'[i]t is not everything that takes place in the absence of a defendant upon trial for which a reversal should be ordered. There must be an actual showing of injury or a showing of facts from which injury might reasonably be inferred.'" *Mares v. State*, 571 S.W.2d 303, 305 (Tex. Crim. App. 1978) (quoting *Cartwright v. State*, 97 Tex. Crim. 230, 259 S.W. 1085, 1086 (Tex. Crim. App. 1924) (op. on reh'g)); *see also Tracy*, 14 S.W.3d at 827; *West v. State*, 752 S.W.2d 593, 597 (Tex. App.—Tyler 1987, pet. ref'd). The trial court's failure to obtain the defendant's presence at the hearing on a motion for new trial through a bench warrant is harmless if the defendant was not injured by the failure. *See Jackson v. State*, 379 S.W.2d 896, 896 (Tex. Crim. App. 1964) ("It is only in those cases where the defendant desires to be present at the hearing of a motion for new trial and is denied such right that a reversal is called for . . . ."); *Aguero v. State*, 818 S.W.2d 128, 133

(Tex. App.—San Antonio 1991, pet. ref'd) (op. on reh'g); *West*, 752 S.W.2d at 597 (concluding that an article 33.03 violation resulting from the failure to procure the defendant's presence at a hearing on a motion for new trial produced no harm or injury); *see also Munoz v. State*, No. 05-14-00392-CR, 2015 Tex. App. LEXIS 5038, at **11-12 (Tex. App.—Dallas May 18, 2015, no pet.) (mem. op., not designated for publication) (same).

Here, the record reflects that nowhere in his motions for new trial and in arrest of judgment did appellant's counsel request appellant's presence at the hearing. Moreover, at the hearing on appellant's motions that was conducted about a month later, appellant's counsel did not object to appellant's absence from the hearing. Appellant's counsel also failed to notify the trial court about appellant's absence before arguing his motion for new trial. At the conclusion of appellant's counsel's argument, the trial court asked appellant's counsel if that was all he had to discuss, to which appellant's counsel responded, "Yes, Your Honor." Thereafter, the prosecutor made the following comments: "Judge[,] one more thing I think we need to make clear. The Defendant was not in the courtroom and was not here for this hearing, and I'm assuming [defense counsel] is waiving the presence of his client for the Motion for New Trial." Appellant's counsel responded, "Well[,] we actually asked about that. We were told that he was going to be present, so him not being present today actually surprised me." The trial court coordinator then mentioned, "We thought he was still in jail. He was already gone to TDC. We could not get him overnight."

The above commentary indicates that appellant's counsel was aware of appellant's absence from the hearing and that he chose to proceed with argument without objecting, seeking a continuance, or notifying the trial court. In any event, on appeal, appellant contends that his absence from the hearing prevented him from testifying about alleged "*Brady*" violations. However, appellant did not give any indication as to the nature or content of any testimony he could have provided to the trial court if he was present in the courtroom or how the testimony might have aided the trial court in deciding the issues in his motion for new trial.

Because the record does not reflect that appellant's counsel objected to having the hearing on the motion for new trial in his absence, we conclude that appellant waived his right to be present at the hearing. *See Coons v. State*, 758 S.W.2d 330, 339 (Tex. App.—Houston [14th Dist.] 1988, no pet.) ("A defendant, however, may waive his right to be present at a motion for new trial." (citing *Phillips v. State*, 163 Tex. Crim. 13, 288 S.W.2d 775 (1956)). And even if appellant had not waived this right, we cannot say that appellant has shown that his absence from the hearing caused harm or injury. *See Mares*, 571 S.W.2d at 305; *Cartwright*, 259 S.W. at 1086; *Tracy*, 14 S.W.3d at 827; *Aguero*, 818 S.W.2d at 133; *West*, 752 S.W.2d at 597; *see also Munoz*, 2015 Tex. App. LEXIS 5038, at **11-12. Therefore, based on the foregoing, we overrule appellant's tenth and eleventh issues.

## X. CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed September 21, 2016
Do not publish
[CR25]

